Argued and submitted July 29, 2019; reversed and remanded with instructions to enter a jurisdictional judgment omitting allegations three and four in the second amended petition as a basis for jurisdiction, otherwise affirmed May 13; petition for review denied August 27, 2020 (366 Or 826)

In the Matter of A. B.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

A. J. G.,
*Appellant.*

Klamath County Circuit Court
18JU09211; A170407

465 P3d 293

Father appeals from a juvenile court judgment asserting jurisdiction over his child, arguing that there is insufficient evidence to support the four allegations in the dependency petition that formed the basis of the juvenile court's judgment. The Department of Human Services (DHS) concedes that the juvenile court erred in asserting jurisdiction with respect to the third allegation involving substance abuse, which the Court of Appeals accepted, and argues that there is sufficient evidence in the record on the remaining allegations. *Held*: The trial court did not err by asserting jurisdiction over child based on the first two allegations involving exposure to domestic violence but it did err by asserting jurisdiction on the fourth allegation involving the failure to maintain an adequate mental health regimen.

Reversed and remanded with instructions to enter a jurisdictional judgment omitting allegations three and four in the second amended petition as a basis for jurisdiction; otherwise affirmed.

Marci Warner Adkisson, Judge.

Shannon L. Flowers, Deputy Public Defender, argued the cause for appellant. On the brief were Tiffany Keast, Deputy Public Defender, and Shannon Storey, Chief Defender, Juvenile Appellate Section, Office of Public Defense Services.

Inge D. Wells, Assistant Attorney General, argued the cause for respondent. On the brief were Judy C. Lucas, Assistant Attorney General, Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, and Shorr, Judge, and Powers, Judge.*

POWERS, J.

Reversed and remanded with instructions to enter a jurisdictional judgment omitting allegations three and four in the second amended petition as a basis for jurisdiction; otherwise affirmed.

_____

* Shorr, J., *vice* Mooney, J.

**POWERS, J.**

In this juvenile dependency case, father appeals from a juvenile court judgment asserting jurisdiction over his child, arguing that there is insufficient evidence to support the allegations in the dependency petition. The petition alleged four bases for jurisdiction: (1) child's exposure to domestic violence between father and mother; (2) mother's failure to protect child although mother knew of the domestic violence allegations against father; (3) father's substance abuse issues; and (4) father's failure to adequately maintain mental health appointments and medication regimen. The juvenile court took jurisdiction over child, who was eight years old at the time of the hearing, concluding that the Department of Human Services (DHS) proved each of the allegations in the petition and that child's circumstances were such as to endanger his welfare. On appeal, the state concedes that the juvenile court erred in asserting jurisdiction with respect to the third allegation involving substance abuse, and we accept that concession. As explained below, we reject father's arguments that the court erred in asserting jurisdiction under the first and second allegations, but we agree that the court erred in asserting jurisdiction under the fourth allegation involving father's mental health appointments and medication regimen. Accordingly, the jurisdictional judgment is reversed and remanded for an entry of a judgment establishing dependency jurisdiction that is not based on the allegations of father's substance abuse and failure to adequately maintain mental health appointments and a medication regimen.

The juvenile court made its jurisdictional determination under ORS 419B.100(1)(c).[1] Father has not requested

---

[1] ORS 419B.100 provides, in part:

"(1) Except as otherwise provided *** the juvenile court has exclusive original jurisdiction in any case involving a person who is under 18 years of age and:

"*****

"(c) Whose condition or circumstances are such as to endanger the welfare of the person or others."

ORS 419B.100 has been amended since the juvenile court asserted jurisdiction over the child in February 2019. *See* Or Laws 2019, ch 594, § 8. Because that amendment does not affect our analysis, we refer to the current version of the statute in this opinion.

*de novo* review, and this is not an exceptional case in which such review would be appropriate. Thus, our task in reviewing the jurisdictional judgment is to determine whether "the record permit[ted] the juvenile court to determine that the child's condition or circumstances gave rise to a current threat of serious loss or injury to the child and that there is a reasonable likelihood that the threat will be realized." *Dept. of Human Services v. N. P.*, 257 Or App 633, 639, 307 P3d 444 (2013) (internal quotation marks omitted). When a juvenile court makes a jurisdictional determination under ORS 419B.100(1)(c), we:

> "(1) assume the correctness of the juvenile court's explicit findings of historical fact if these findings are supported by any evidence in the record; (2) further assume that, if the juvenile court did not explicitly resolve a disputed issue of material fact and it could have reached the disposition that it reached only if it resolved that issue in one way, the court implicitly resolved the issue consistently with that disposition; and (3) assess whether the combination of (1) and (2), along with nonspeculative inferences, was legally sufficient to permit the trial court to determine that ORS 419B.100(1)(c) was satisfied."

*N. P.*, 257 Or App at 639-40. We recite the facts consistent with those standards.

This case involves parents' child, who was eight years old at the time of the jurisdictional trial.[2] DHS has had contact with the family on 16 prior occasions to follow up on referrals of concern since 2008. Besides child, mother has two other biological children: E and J. Father is child's biological father, and E and J's step-father. Child's IQ is "around 50," and he "requires a lot of one-on-one attention, a lot of structure, [and] a lot of additional services that need to be followed up on." DHS had assigned a caseworker specific to high-needs children to the family, and child was receiving services tailored to children with developmental disabilities.

---

[2] The jurisdictional trial also involved mother's other two children, E and J. Although we refer to E and J to provide context for father's arguments, the juvenile court's determinations as to those children are not at issue in this appeal. Additionally, mother does not appeal the jurisdictional judgments and is not a party to this appeal.

In 2017, father was released from prison and placed on post-prison supervision until August 2020. In May 2018, mother agreed to participate in DHS's strengths and needs program and also agreed to an assessment.[3] She did not follow through on the assessment, became difficult to contact, and failed to secure her children's recommended mental health counseling.

While the family was living together in the fall of 2018, DHS received a referral of concern for the children because mother had applied for a domestic violence grant from DHS. The next day, October 19, mother filed for a restraining order against father. In her petition for a restraining order, mother alleged two previous domestic violence incidents involving herself and father: one from October 7 when father "strangled [mother] at the motel, [and] left bruises from holding [her] down while strangling" her; and one from about a week later on October 15 when father "used his palm and knee to push [mother] down." Father was arrested for the latter incident. The court granted the restraining-order petition on October 19 and granted temporary physical custody of child to mother. The court also mandated that father have no contact with mother or the children.

Also on October 19, a DHS caseworker visited child and his siblings at school. During that meeting, child disclosed that father "had to leave the home because he had hit his mother and choked her." Then, using his hands, child demonstrated what choking was on his own throat. Child's sibling, J, disclosed that father had to leave the home because he was "pushing" mother and that J had seen it happen. Child's other sibling, E, later told the caseworker that she did not want father to return home and that she was scared of him returning home.

Father twice violated the restraining order by having contact with mother on October 25 and 28. He was found

---

[3] A DHS caseworker explained that the strengths and needs program involves a "life coach" that,

"gets engaged with the family[,] *** identifies the strengths of the family to help them know what they're doing positively and make sure that they continue doing those positive actions, but also identifies the weaknesses or needs of the family so that they can make it a much more suitable living environment for the children."

in contempt of court for both of those violations. Later, on November 13, mother moved to dismiss the restraining order, asserting that child wanted to see father, which the juvenile court granted.

On November 13, DHS received another referral of concern because the children were having contact with father after mother had moved to dismiss the restraining order. According to DHS, father "was deemed to be an unsafe person to be around the children until he completed his services." A caseworker visited mother and father that day and they told the caseworker that father had not been seeing the children. While mother and father were speaking with the caseworker, however, the children arrived at the residence and informed the caseworker that they had been in contact with father. DHS removed the children that day, and the juvenile court issued a shelter order for all three of the children on November 14.

DHS then petitioned the juvenile court to assert jurisdiction over child based on three allegations relating to domestic violence between father and mother and father's substance abuse problem. A jurisdictional trial was held on February 14, 2019, in which mother, father, three DHS caseworkers, and father's post-prison supervision officer testified. Near the end of the trial, DHS moved to amend the petition to add a fourth allegation based on the testimony developed at trial, which the court granted. Thus, the second amended petition alleged, in part:

"1.    *** [Father] engaged in an incident of domestic violence with *** [mother], exposing the child to domestic violence, and he has not successfully engaged in treatment for this conduct or addressed his violent behavior. This condition places the child under a threat of harm.

"2.    *** [Mother] failed to protect the child in that she is aware of the allegations against *** [father]; however, she does not believe he poses a risk to the child. This condition places the child under a threat of harm.

"3.    *** [Father] has a substance abuse problem which is not ameliorated and hinders his ability to adequately and appropriately parent and protect the child. This condition places the child under a threat of harm.

"4.    * * * [Father] has failed to maintain his mental health appointments and medication [regimen], resulting in mood swings and unstable behaviors. This condition places the child under a threat of harm."

DHS's theory on the fourth allegation, as we understand it, was that father's failure to maintain his medication regimen put child at a risk of harm because there was evidence that, if father did not take his medication, then he would suffer from mood swings and irritability, which would lead to arguments between mother and father, and their arguments would escalate to violence.

At trial, mother testified that she did not view father as a threat to the children, that she was living with father at the time of the trial, and that she planned to continue living with him. Yet, mother described in her restraining order petition that father "is very mentally and emotionally abusive." Mother then testified at the trial that father "is like that when he is off his pills." Further, she testified that she moved to dismiss the restraining order because father was back on his pills and that the pills were "the only thing that was keeping him stable."

Additionally, mother testified that, when father is not taking his medication, he gets "mood swings," "gets irritated really easily," and "starts yelling." Father testified that he was not taking his medication for the three weeks preceding the domestic violence incident on October 7, the day that he strangled mother. Father testified that the children were at the residence with both parents that morning, but that their grandparents took the children out of town before mother and father began fighting.

When mother was contacted by a DHS caseworker on October 18, she was made aware of DHS's concerns. A DHS caseworker testified that mother "stated her ability to protect and her willingness to protect" her children and the caseworker also explained that, because mother had a restraining order that restricted father's contact with mother and the children, DHS did not intervene at that time. Another DHS caseworker testified that "[h]ad [mother] kept the restraining order and abided by the restraining order,

there is a high likelihood that [DHS] would not have picked up the children."

The juvenile court, however, found each parent's testimony incredible "because of the cobweb of their testimony." Specifically, mother's and father's testimony was incredible with respect to their descriptions of domestic violence and the number of domestic violence incidents that occurred.[4] The court explained:

> "[W]hat I heard specifically from the testimony was at least two incidents of domestic violence from each of them, even though [the parents] tried to back pedal and make it only one. And then the children's clear disclosures to the caseworkers in regard to what they observed * * * and even though that's not what [the parents] admitted, it makes it more clear to me that there has been ongoing incidents of domestic violence and inappropriate behavior with each other that the children have observed.
>
> "* * * * *
>
> "So when [father] makes the argument that the only two people who said that the children weren't present are the parents, that is not reliable testimony to me. They have a self-interest here, their stories aren't straight, they create things as they've gone along through their testimony."

Ultimately, the juvenile court determined that DHS proved by a preponderance of the evidence each allegation relating to father and mother and asserted jurisdiction over child. Father now appeals, arguing that the juvenile court erred by asserting jurisdiction under each allegation.

Father asserts that the juvenile court erred in taking jurisdiction over child under the first allegation, which stated that father engaged in domestic violence with mother, which exposed child to domestic violence and placed him at a

---

[4] To the extent that the parties dispute the juvenile court's credibility determinations, we readily conclude that there is evidence to support the court's findings. As described above, we defer to a court's findings if there is any evidence to support them. *See N. P.*, 257 Or App at 639. There is evidence to support the court's finding that the parents' testimony was inconsistent regarding the number of domestic violence incidents and that the parents were not honest when asked by a DHS caseworker whether child had had contact with father. Moreover, father does not separately assign error to the court's credibility determinations. Accordingly, we see no reason to disturb those findings.

risk of harm. Father contends, among other arguments, that the juvenile court's jurisdictional determination was speculative, and that DHS did not establish a nexus between an exposure to domestic violence and threat of harm to child. Father also challenges the juvenile court's assertion of jurisdiction under the second allegation pertaining to mother's failure to protect child from father. Conversely, DHS maintains that there was legally sufficient evidence for the court to determine that child had been exposed to domestic violence and that that exposure to domestic violence presents a threat of harm to child. DHS further asserts that the evidence was legally sufficient for the juvenile court to assert jurisdiction based on those allegations.

We conclude that the juvenile court did not err in asserting jurisdiction over child on the basis of the first two allegations in the petition relating to domestic violence. Mother filed for a restraining order against father, listing father as the perpetrator in two incidents of domestic violence. In one of those incidents, she described father strangling her. Although father claimed that the children were not present, the juvenile court found otherwise and there is evidence in the record to support the court's finding.

As noted above, the juvenile court found that "there has been ongoing incidents of domestic violence and inappropriate behavior" by both father and mother "that the children have observed." Both child and J told a DHS caseworker that father had to leave the family home because of domestic violence. Specifically, child said that father hit and strangled mother and demonstrated "with two hands to his throat that that's what choking was." The caseworker explained:

> "You don't usually get that detailed of a disclosure from a child regarding choking, and [child] specifically said, [father] choked my mom like this, and that was completely— I did not guide him through that, he just spontaneously showed me what that looked like. So my concerns were the exposure to domestic violence."

Further, J told the caseworker that she had seen father push mother and that that was why father had to leave home. That evidence combined supports a reasonable inference that

child was present during the incident and exposed to domestic violence. Additionally, father's own testimony admitted that the family was living together on October 7, but he claimed that the children were not present for the domestic violence incident because mother's parents had picked them up in the morning and returned the children later that day after the incident. Because there is evidence in the record to support the court's finding that child observed domestic violence, we will not, under our standard of review, disturb the juvenile court's credibility determination that disbelieved father about the children not being in the home during the October 7 incident.

Moreover, DHS established a nexus between the exposure to domestic violence and a current threat of harm. As noted earlier, child, who has high needs, observed "ongoing incidents of domestic violence and inappropriate behavior." A DHS caseworker testified that children exposed to domestic violence can be "physically harmed in that instance and they can also be emotionally and mentally affected by those situations that can affect their developmental status." As we recently explained, a child "need not be physically harmed by or even aware of the domestic violence surrounding the child to be at risk." *Dept. of Human Services v. T. J.*, 302 Or App 531, 538-39, 462 P3d 315 (2020) (citation, internal quotation marks, and brackets omitted). Here, there was sufficient evidence for the juvenile court to assert jurisdiction over child, who is particularly vulnerable to domestic-violence exposure given his need for structure and developmental disability services, and low IQ. *See T. J.*, 302 Or App at 539 (observing that, unlike the teenage child involved in *Dept. of Human Services v. D. W. M.*, 296 Or App 109, 437 P3d 1186 (2019), a four-month-old infant is more vulnerable to exposure to domestic violence); *see also State v. S. T. S.*, 236 Or App 646, 655-56, 238 P3d 53 (2010) (concluding that, although newborn child had never lived with parents together, the evidence presented satisfied the "low any-evidence standard" supporting juvenile court jurisdiction where evidence in the record shows that the older child was scared of the parents when they argued and that, "according to the county mental health specialist, when there is physical violence in the home, a child may suffer an inadvertent injury").

Finally, as noted above, mother testified that she was living with father and would remain living with him. That testimony also establishes that, at the time of the trial, child was at a current risk of harm. *See Dept. of Human Services v. K. V.*, 276 Or App 782, 791, 369 P3d 1231, *rev den*, 359 Or 667 (2016) ("DHS has the burden to prove that there is a nexus connecting the parent's allegedly risk-causing conduct and the harm to the child and also that the risk of harm is present at the time of the hearing and not merely speculative." (Internal quotation marks omitted.)). Therefore, there was legally sufficient evidence for the juvenile court to assert jurisdiction over child under those allegations.

Next, father challenges the allegation that pertains to his medication regimen. He argues that DHS failed to establish a nexus between father's failure to take his medication and a current, nonspeculative risk of harm to child.

We conclude that, assuming that DHS proved a nexus between father's failure to properly medicate and a risk of harm to child, DHS failed to prove that there was a current threat of harm to child at the time of the jurisdictional trial.

As noted above, DHS has the burden to prove that the threat of harm to child was current. *See K. V.*, 276 Or App at 791. DHS argues that because father had been off his medication for three weeks at the time of the motel incident and because he had missed his doctor appointments, the juvenile court could reasonably infer that father would not adhere to his medication regimen in the future, which would create a risk of harm to child. We disagree. DHS has not pointed to any evidence in the record that established that the threat of harm resulting from father's failure to remain properly medicated was current at the time of the trial. It is undisputed that father had resumed taking his medication after the October domestic violence incidents and DHS has not pointed to any evidence that his prior episode of missing his medications and appointments was indicative of a pattern of behavior. Accordingly, we conclude that the court erred in asserting jurisdiction based on the fourth allegation in the second amended petition.

Lastly, we reject father's argument that the juvenile court erred by asserting jurisdiction over child at all. We have explained that "the key inquiry in determining whether conditions or circumstances warrant jurisdiction is whether, under the totality of the circumstances, there is a reasonable likelihood of harm to the welfare of the child." *Dept. of Human Services v. C. Z.*, 236 Or App 436, 440, 236 P3d 791 (2010) (internal quotation marks and brackets omitted). Although the juvenile court erred in asserting jurisdiction under the third and fourth allegations in the second amended petition, which involved father's substance abuse and father's failure to follow a medication regimen, we hold that, considering the totality of the circumstances, the juvenile court did not err in asserting jurisdiction based on the remaining allegations.

Reversed and remanded with instructions to enter a jurisdictional judgment omitting allegations three and four in the second amended petition as a basis for jurisdiction; otherwise affirmed.