Argued and submitted August 31, reversed December 15, 2021

In the Matter of X. T.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

S. G. T.,
*Appellant.*

Deschutes County Circuit Court
20JU05160; A175330

503 P3d 1264

The juvenile court asserted dependency jurisdiction over mother's infant child, X, on the grounds that mother's alcohol abuse impairs her ability to safely parent and that she subjects X to a volatile and erratic household. Mother appeals. She argues that the evidence was legally insufficient to establish the jurisdictional bases. *Held*: The juvenile court erred in asserting dependency jurisdiction. Several of the court's factual findings are not supported by evidence in the record, and, without those findings, the evidence was legally insufficient to establish jurisdiction. Although mother has a history of alcohol abuse, there is no evidence in this record that mother has drank to the point of intoxication since X's birth or that mother's drinking has prevented her from providing minimally adequate care to X and created a nonspeculative risk of serious harm to X. The evidence also was insufficient to establish a volatile and erratic household for purposes of creating dependency jurisdiction.

Reversed.

Walter Randolph Miller, Jr., Judge.

Joel C. Duran, Deputy Public Defender, argued the cause for appellant. Also on the brief was Shannon Storey, Chief Defender, Juvenile Appellate Section, Office of Public Defense Services.

Philip Thoennes, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Aoyagi, Judge.

AOYAGI, J.

Reversed.

**AOYAGI, J.**

The juvenile court asserted dependency jurisdiction over X, aged seven months at the time of trial in November 2020, on four bases: (1) that mother's pattern of substance abuse, including alcohol abuse, impairs her ability to safely parent; (2) that mother subjects X to a volatile and erratic household, creating a threat of harm to X; (3) that father's pattern of substance abuse, including alcohol abuse, impairs his ability to safely parent; and (4) that father subjects X to a volatile and erratic household, creating a threat of harm to X. Mother appeals, challenging each jurisdictional basis and, ultimately, the assertion of dependency jurisdiction. We conclude that several of the juvenile court's findings are unsupported by any evidence in the record and that, without those findings, the evidence is legally insufficient to support jurisdiction. Accordingly, we reverse.

A juvenile court may assert dependency jurisdiction under ORS 419B.100(1)(c)—thus making a child a ward of the court—when it finds that the child's conditions or circumstances endanger the child's welfare, considering the totality of the circumstances. *Dept. of Human Services v. C. J. T.*, 258 Or App 57, 61, 308 P3d 307 (2013). To establish jurisdiction, the state must show that the child's conditions or circumstances "present a current threat of serious loss or injury" that is nonspeculative and reasonably likely to be realized. *Id.* at 61-62. When a parent's alleged risk-causing conduct is at issue, the state has the burden to demonstrate a nexus between the parent's conduct and the threatened harm to the child. *Dept. of Human Services v. L. E. F.*, 307 Or App 254, 258, 476 P3d 119 (2020), *rev den*, 367 Or 559 (2021).

On appeal of a judgment asserting dependency jurisdiction over a child, we "view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record was legally sufficient to permit that outcome." *Dept. of Human Services v. N. P.*, 257 Or App 633, 639, 307 P3d 444 (2013). We assume the correctness of the court's explicit findings of historical fact, if they are supported by any evidence in the record. *Id.*

As to any material-fact disputes on which the court did not make explicit findings, we assume that it made implicit findings consistent with its disposition. *Id.* at 639-40. We then assess whether the combination of the court's explicit and implicit findings, together with nonspeculative inferences, "was legally sufficient to permit the court to determine that ORS 419B.100(1)(c) was satisfied." *Id.*

With respect to the first jurisdictional basis—that mother's "pattern of substance abuse, including alcohol abuse," impairs her ability to safely parent—we conclude that evidence for that jurisdictional basis is legally insufficient. Certainly, there is evidence that mother is addicted to alcohol and that, to date, she has been unable to completely stop drinking alcohol. But the state may not take a child from his home based solely on the fact of alcohol use. *See State ex rel Juv. Dept. v. Smith*, 316 Or 646, 652, 853 P2d 282 (1993) (rejecting "the proposition that any specific condition or circumstance *per se* does, or does not, establish the juvenile court's jurisdiction"). Rather, the Department of Human Services (DHS) must prove that a parent uses alcohol "'in a way that puts the child at risk of serious harm.'" *Dept. of Human Services v. J. J. B.*, 291 Or App 226, 236, 418 P3d 56 (2018) (quoting *Dept. of Human Services v. M. Q.*, 253 Or App 776, 787, 292 P3d 616 (2012)).

Here, by her own admission, mother was raised in a home where drinking was "normalized," she first drank alcohol at age 13, and her heaviest drinking has occurred in her 30s. (Mother was 39 years old at the time of trial.) Mother was medically diagnosed with "severe" alcohol abuse disorder in March 2019, drove a vehicle while intoxicated in July 2019 (resulting in a DUII conviction), and was medically diagnosed with "moderate" alcohol abuse disorder in March 2020. The facts underlying the medical diagnoses and the DUII are not in the record, but that evidence is sufficient to establish that mother has a recent history of alcohol *abuse*—as distinct from mere alcohol use. At the time of the jurisdictional hearing in November 2020, mother had been engaged in substance abuse treatment for two months, and she testified to being committed to staying sober and stopping all alcohol use. However, given mother's history,

the juvenile court had reason to be skeptical, as it was, and reasonably could find, as it did, that mother is at high risk of relapsing and of continuing to drink alcohol.

At the same time, there is no evidence that mother drank alcohol while she was pregnant with X. She testified that she did not, and there is no contrary evidence. There is evidence that mother resumed drinking soon after X was born. Viewed in the light most favorable to the disposition, mother was drinking alcohol as often as "nightly" between May and September 2020, even though it violated her DUII probation terms. It is undisputed that mother was also min-imally engaged in alcohol treatment programs during that time. But there is no evidence that mother has consumed alcohol to the point of *intoxication* since X was born, let alone that she failed to care for X on any occasion due to intoxication.

In that context, we consider an incident that occurred on the night of September 6, 2020, which was the impetus for DHS petitioning the juvenile court to assert dependency jurisdiction over X. Father began drinking when he woke up and, by some point, had consumed approximately eight or nine beers and six or seven shots of alcohol. Maternal grandmother, who had a difficult relationship with father, was living in the home at the time. That evening, father gave X a bath. He took X—and a bottle of alcohol—into the bathroom. X was secured in a baby bath seat as father bathed him. Grandmother, who had been drinking, began screaming and banging on the locked bathroom door, and she intermittently told mother that father was harming the baby. Mother—who had had a "couple shots" earlier in the evening—was trying to stay out of it, but she checked on X each time to make sure that he was okay, which he was. At least once, mother asked father to give X to her, but he refused. Grandmother called the police twice. The first time, mother was cleaning the oven, and the police left without talking to her. The second time, father had taken X out-side to get away from grandmother, mother told the police that the issue was between grandmother and father, and, because father was intoxicated, the police directed father to hand X to mother, which he did. The police then left, and

mother put X to bed. Grandmother subsequently moved out of parents' home and, according to parents, is not allowed to drink alcohol when she visits.

The threat of serious harm to a child created by a parent's behaviors need not be *realized* for dependency jurisdiction to arise. A "reasonable likelihood" that it will be realized is enough to establish jurisdiction. *N. P.*, 257 Or App at 639. However, the risk must be "nonspeculative." *Id.* at 640.

Here, our review is complicated by the fact that the juvenile court made (and relied on) several significant factual findings that are unsupported by any evidence in the record. Most notably, the court expressly found that mother was "intoxicated" on the evening of September 6 and that things became "physical" between mother and father, "in the sense that there's a baby between them and one parent's trying to grab the baby from the other." The court described the situation as being that "two intoxicated parents are attempting to exercise physical dominance over their infant child, and then one of them keeps the child [and] locks himself into the bathroom." Those findings are unsupported by evidence. There is no evidence that mother was intoxicated that night. No one described mother as being intoxicated. The only evidence is that she had "a couple shots" earlier in the evening. Further, there is no evidence of parents physically struggling over X. There is some evidence that mother *asked* father to give X to her at least once, but not that she physically "grabbed" for X. Lastly, there is no evidence that father went to the bathroom while arguing with mother. The only evidence is that father either went to the bathroom to get away from grandmother and then decided to give X a bath, or that mother asked him to give X a bath.

The juvenile court also found that, on an unspecified occasion, both mother and father "were intoxicated when DHS showed up, and—becoming angry. That's a pattern." There is no evidence of DHS "showing up" at parents' home and finding mother intoxicated. To the extent that the court may be referring to September 10, when DHS went to parents' home to take physical custody of X, mother and grandmother were home—while father was at work—and

*grandmother* was intoxicated when DHS arrived. However, as DHS concedes, there is no evidence that mother was intoxicated.

The state argues that the record is legally sufficient to support jurisdiction based on mother's alcohol abuse, even without the unsupported factual findings, but we cannot agree. Certainly, with an infant to care for, it would be preferable to have at least *one adult* in the home who is able to refrain from drinking *any* alcohol, particularly when everyone else is intoxicated, as was the case on September 6. It is apparent that, at least prior to September 2020, mother was unwilling or unable to stop drinking to be that person. That is concerning, to say the least, given X's young age. But we cannot say that mother's drinking—as it is documented *in this record*—was at such a level in the relevant period that it created an inherent risk of serious harm to X that was nonspeculative and "reasonably likely" to be realized.

There is no evidence of mother drinking to the point of *intoxication* on any occasion since X was born, let alone any evidence of her failing to care for X (or lacking the capacity to care for X) as a result of intoxication. On this record, stripping out unsupported findings, we cannot say that mother's alcohol consumption, in and of itself, gives rise to dependency jurisdiction. It is not ideal parenting by any means, and, for all of the reasons that mother herself recognized in her testimony, one hopes that mother will continue in treatment and break the cycle of addiction for her children's sake. As a legal matter, however, the evidence in this record was legally insufficient to support dependency jurisdiction based on mother's alcohol use.

To the extent that the first jurisdictional basis extends to other substances—it refers to "substance abuse, including alcohol abuse"—the only other substance that there is evidence that mother uses is marijuana. There is no evidence that, since X's birth, mother has used marijuana in a way that endangers X, alone or in conjunction with drinking alcohol. *See Dept. of Human Services v. C. Z.*, 236 Or App 436, 443-44, 236 P3d 791 (2010) (holding that evidence of marijuana use, without evidence of resulting danger to the children, was insufficient to establish jurisdiction).

As for the second jurisdictional basis, that mother subjects X to a "volatile and erratic household," vague jurisdictional bases can be problematic. *See, e.g.*, *Dept. of Human Services v. L. A. K.*, 306 Or App 706, 719, 474 P3d 925 (2020) (discussing "vague and amorphous" jurisdictional bases). On this record, however, we readily conclude that the state failed to prove that mother and father have a generally "volatile and erratic household" that endangers X. There is evidence of a single instance of domestic violence in January 2019—well over a year before X was born—when mother hit father and burned him with a cigarette lighter during an argument. Both mother and father testified that that was an isolated incident, there is no contrary evidence, and DHS's concerns regarding domestic violence as a result of that incident were fully resolved by the time X was born. There is evidence of volatility between father and *grandmother*. It is well-established that they do not get along, the September 6 incident speaks for itself, and father testified that grandmother is "very violent and very rude" to him when she drinks. But grandmother has moved out of parents' home, and there is no evidence or even suggestion that she intends to return or would be allowed to return. The only other evidence is that one DHS caseworker has at times seen mother and father verbally argue at the DHS office. The foregoing evidence does not add up to a current threat of serious harm to X from mother subjecting X to a "volatile and erratic household."

Having concluded that the state failed to put forward legally sufficient evidence to establish the jurisdictional bases as to mother, we need not reach the jurisdictional bases as to father. *Dept. of Human Services v. J. D. B.*, 299 Or App 511, 512 & n 2, 448 P3d 717 (2019).

Reversed.