188 June 4, 2025 No. 520

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of W. O. A. IV, aka B. B. E.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

M. E.,
*Appellant.*

Washington County Circuit Court
24JU03934; A185889

Michele C. Rini, Judge.

Submitted April 30, 2025.

Aron Perez-Selsky filed the brief for appellant.

Dan Rayfield, Attorney General, Benjamin Gutman, Solicitor General, and Stacy M. Chaffin, Assistant Attorney General, filed the brief for respondent.

Before Tookey, Presiding Judge, Joyce, Judge, and Jacquot, Judge.

JACQUOT, J.

Reversed.

**JACQUOT, J.**

In this juvenile dependency case, mother appeals from the juvenile court's judgment asserting jurisdiction over her infant son, W.[1] She asserts that "the juvenile court erred in finding that [her] 'pattern of criminal activities' and 'history of and current substance abuse' posed a current threat of serious loss or injury warranting jurisdiction." Specifically, mother asserts the juvenile court erred, because (1) there was no evidence that mother's past criminal activities involved children or evinced harm to children; (2) there was no evidence that W has been exposed to controlled substances or that mother used controlled substances around him; (3) there was no evidence, even if mother had recently used controlled substances, that her use impaired her ability to meet W's basic needs; and (4) at the time of the jurisdictional hearing, mother was not as risk of incarceration while in Oregon. Consequently, in mother's view, the Oregon Department of Human Services (ODHS) did not prove that she exposed her child to a nonspeculative threat of serious loss or injury stemming from her criminal activities and substance abuse.[2]

ODHS responds that the court properly asserted jurisdiction because "mother's substance abuse was active at the time of the trial, intertwined with her criminal activity, and combined with the use and possession of firearms, all of which posed a current and non-speculative risk to [W]."

Because evidence presented at the time of the jurisdictional hearing did not support a conclusion that mother posed a current and nonspeculative risk to W under ORS 419B.100(1)(c), as further explained below, we reverse.

For a juvenile court to take jurisdiction over a child, ODHS must present evidence "sufficient to support a conclusion that the child's condition or circumstances expose the child to a current threat of serious loss or injury that is likely to be realized." *Dept. of Human Services v. J. H.*, 292 Or App 733, 737, 425 P3d 791 (2018) (internal quotation

---

[1] Father is deceased.

[2] At the time of trial, W took the same position and asked that the case be dismissed. He does not appear on appeal.

marks omitted). Specifically, ODHS "must establish the type, degree, and duration of the harm at issue," and it must "establish a nexus between the allegedly risk-causing conduct and the harm to the child." *Id.* (internal quotation marks omitted). The risk of harm must be "nonspeculative"; that is, "there must be a reasonable likelihood that the threat will be realized." *Id.* (internal quotation marks omitted).

No party asks for *de novo* review, nor do we find this to be an exceptional case warranting it. In the absence of a *de novo* review, in reviewing a juvenile court's determination of jurisdiction in juvenile dependency proceedings, we:

> "(1) assume the correctness of the juvenile court's explicit findings of historical fact if these findings are supported by any evidence in the record; (2) further assume that, if the juvenile court did not explicitly resolve a disputed issue of material fact and it could have reached the disposition that it reached only if it resolved that issue in one way, the court implicitly resolved the issue consistently with that disposition; and (3) assess whether the combination of (1) and (2), along with nonspeculative inferences, was legally sufficient to permit the trial court to determine that ORS 419B.100(1)(c) was satisfied."

*Dept. of Human Services v. N. P.*, 257 Or App 633, 639-40, 307 P3d 444 (2013). In considering this case, we note that the juvenile court made adverse credibility findings against mother. Those findings are supported by the record, and we do not disturb them. *Dept. of Human Services v. A. J. G.*, 304 Or App 221, 230, 465 P3d 293, *rev den*, 366 Or 826 (2020).

Nevertheless, regarding mother's use of controlled substances, there is an absence of evidence in this record to support asserting jurisdiction on that basis, even if her substance abuse persisted at the time of the jurisdictional hearing.[3] Specifically, the record contains no evidence of W testing positive for controlled substances, nor any evidence that mother's substance use, if it does persist, has caused harm to W. The record contains no evidence that W was present at any time that mother was suspected to be under

---

[3] It appears that mother has not been drug tested during the pendency of this case.

the influence of drugs.[4] Mother arrived early and engaged competently during visits with W; per an ODHS worker, she was "very attentive." The court determined that she was not in an altered state during visits with W, and that during the hearing, she appeared healthy and her skin did not show any signs of meth usage. As we have previously explained, substance use, in the absence of evidence that the substance use causes a risk of serious harm, is not sufficient to establish jurisdiction. *Dept. of Human Services v. S. G. T.*, 316 Or App 442, 445-46, 503 P3d 1264 (2021) (noting that a parent's pattern of use is not—by itself—sufficient to establish the court's jurisdiction, rather, ODHS has a burden to "prove that a parent uses [substances] in a way that puts the child at risk of serious harm" (internal quotation marks and citation omitted)); *State ex rel Juv. Dept. v. Smith*, 316 Or 646, 652, 853 P2d 282 (1993) (rejecting "the proposition that any specific condition or circumstance *per se* does, or does not, establish the juvenile court's jurisdiction").

Regarding mother's past criminal activity—the vast majority of which occurred years before W's birth—the evidence does not establish a nexus between her criminal history and a risk of serious harm to W. Jurisdiction cannot be based on speculation that a parent's past problems persist at the time of the jurisdictional hearing in the absence of any evidence that the risk, in fact, remains. *Dept. of Human Services v. S. P.*, 249 Or App 76, 90-91, 275 P3d 979 (2012) (discussing a number of cases in which we reversed a judgment of jurisdiction where there was insufficient evidence that the parent's behavior created a reasonable likelihood of harm to the child at the time of the dependency hearing).

To be sure, after W was born and was in substitute care, mother was arrested for providing a false name to a police officer in circumstances that would present a risk to W if W had been present. But we fail to see how that conduct on mother's part establishes a risk of serious harm to W. If W *had* been present that day, this case would look different.

---

[4] Although an officer, trained in identification of drug use, who arrested mother for providing a false name, approximately one week after W's birth, believed mother to be under the influence of opioids at that time, no drug test was administered. W was not with mother that day.

But none of us are able to determine what choices mother would have made that day if her newborn child was present.

During closing argument in this case, W's attorney argued that mother is doing well with visits with W, showing a lot of dedication to W, and that she clearly loves him, and ultimately that W should only be removed from mother "if we have an adequate nexus between her behavior and the child's safety." W's attorney asked for the case to be dismissed "given the lack of information as to what's happened since [the day mother provided false information to police], coupled with mom's dedication to [W]."

We, of course, do not base our decision on the argument of W's attorney—but we do find his position as to the lack of evidence connecting mother's *past* criminal behavior with a risk of serious harm to W at the time of the hearing well-founded.

Ultimately, we determine that ODHS did not carry its burden to establish that there is an adequate nexus to support the court's jurisdiction.

Reversed.