474 December 10, 2025 No. 1051

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of L. N. L.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

D. J. L.,
*Appellant.*
Coos County Circuit Court
24JU06041; A187247

Matthew P. Muenchrath, Judge.

Submitted September 26, 2025.

Aron Perez Selsky filed the brief for appellant.

Dan Rayfield, Attorney General, Benjamin Gutman, Solicitor General and Stacy M. Chaffin, Assistant Attorney General, filed the brief for respondent.

Before Tookey, Presiding Judge, Egan, Judge, and Jacquot, Judge.

EGAN, J.

Affirmed.

**EGAN, J.**

Father appeals from and seeks reversal of the juvenile court's judgment dismissing the Oregon Department of Human Services' (ODHS) petition for establishment of juvenile dependency jurisdiction over his nine-year-old daughter, L. The juvenile court dismissed the petition because the state had not proved that L's guardian, her maternal grandmother, subjected her to physical abuse and inappropriate discipline, thereby placing the child at risk of harm. ORS 419B.100(1)(c). Mother does not appear on appeal. In its briefing to the court, ODHS takes no position on the juvenile court's decision to dismiss its petition for dependency jurisdiction. We affirm the juvenile court's judgment as explained below.

## STANDARD OF REVIEW

We have discretion to review a juvenile dependency proceeding *de novo* in exceptional cases. *See Dept. of Human Services v. R. H.*, 320 Or App 383, 385, 512 P3d 1279 (2022) (citing ORS 19.415(3)(b); ORAP 5.40(8)(c)). Father does not request *de novo* review in accordance with ORS 419B.200 (3)(c), and we decline to exercise our discretion to do so.

In the absence of a *de novo* review, in reviewing a juvenile court's determination of jurisdiction in child protection proceedings, we:

"(1) assume the correctness of the juvenile court's explicit findings of historical fact if these findings are supported by any evidence in the record; (2) further assume that, if the juvenile court did not explicitly resolve a disputed issue of material fact and it could have reached the disposition that it reached only if it resolved that issue in one way, the court implicitly resolved the issue consistently with that disposition; and (3) assess whether the combination of (1) and (2), along with nonspeculative inferences, was legally sufficient to permit the trial court to determine that ORS 419B.100(1)(c) was satisfied."

*Dept. of Human Services v. N. P.*, 257 Or App 633, 639, 307 P3d 444 (2013).

ORS 419B.100(1)(c) requires a fact-specific assessment of whether a child's condition and circumstances justify the exercise of juvenile court jurisdiction. The court does

not determine jurisdiction based on a categorical list of circumstances that are always sufficient or always insufficient; rather, it must evaluate the totality of the child's situation to decide whether the child's condition or surroundings present a current threat of serious loss or injury. *Dept. of Human Services v. M. Q.*, 253 Or App 776, 785-86, 292 P3d 616 (2012). That analysis is inherently contextual and must account for both direct and indirect threats to the child's welfare. *Dept. of Human Services v. T. N.*, 303 Or App 183, 193, 462 P3d 771 (2020). A child's exposure to harm does not need to be immediate or tied to a single incident; jurisdiction may be proper where conditions create an ongoing environment that places the child at risk. *Dept. of Human Services v. S. G. T.*, 316 Or App 442, 448-49, 503 P3d 1264 (2021).

In determining whether there is *any evidence* to support the juvenile court's express findings and credibility determinations, this court views the record in the light most favorable to the court's ultimate conclusion. *Dept. of Human Services v. A. J. G.*, 304 Or App 221, 228 n 4, 465 P3d 293, *rev den*, 366 Or 826 (2020). Accordingly, we summarize the facts consistent with that standard.

## FACTS

Father and mother are the parents of L, who was born in June 2016. L has been under the legal guardianship of her maternal grandmother, G, pursuant to a probate guardianship established in Coos County (Case No. 16PR02124). As L's guardian, G is a party to the dependency proceeding concerning L under ORS 419B.875(1)(a)(B).

In December 2016, when L was six months old, her parents voluntarily placed her with G, who is a Head Start teacher. While in G's care, L was diagnosed with disruptive mood dysregulation disorder, ADHD, and oppositional defiant disorder. L exhibited significant behavioral challenges, including physical aggression toward her caregivers and difficulty responding to authority. Before ODHS became involved, L received mental health services through Kairos Coastline Services, including support from a skills trainer, individual and family therapists, and a family advocate. G

participated in meetings with L's care team to address her ongoing behavioral and emotional needs.

ODHS became involved in November 2024 following a report that G had physically abused L. During an initial interview, ODHS caseworker Haley Messner observed two bruises on L's arm: one light-colored, nickel-sized mark and another "wavy" bruise on her bicep. Dr. Jenni DeLeon later evaluated the child and noted "parallel lines of discoloration," which she determined was "very likely inflicted injury." However, she explained that "inflicted injuries" are distinguishable from injuries caused by *abuse* and "cruelty."

ODHS initiated an in-home safety plan with G but ultimately removed L from G's home after it became clear that G's "violent behavior" while disciplining L escalated. L was then placed with mother. While in mother's care, L's behaviors intensified. She assaulted a mental health evaluator, and mother called the Mobile Crisis Team multiple times. L was placed on a mental health hold and admitted to the hospital, where she remained for approximately two weeks before being discharged back to mother. During this time, L expressed a desire to return to G's care.

In December 2024, ODHS filed an amended petition stating the following concerning G as grounds for jurisdiction:

"G.   [Guardian] is unable or unwilling to meet the child's mental health needs, placing the child at risk of harm.

"H.   [Guardian] lacks the skills, knowledge, motivation and/or judgment to safely parent the child, placing the child at risk of harm.

"I.   [Guardian] physically abused the child, placing the child at risk of harm.

"J.   [Guardian] subjected the child to inappropriate physical discipline that resulted in harm to the child."

Both parents admitted jurisdiction based on their inability to meet L's mental health needs. G contested the petition, and the court held a contested jurisdictional hearing in February 2025.

At the hearing, G testified that on November 8, 2024, L had been sent home from school after kicking a teacher, a counselor, several students, and an older woman. G described spending over an hour attempting to deescalate L's behavior. After leaving the school, G testified that she "kicked [L] to show [her] how it feels," intending it as a life lesson. She acknowledged that her response was "probably not appropriate" but testified that she acted out of concern for L's future.

The juvenile court found that G had made extensive efforts to address L's complex mental health needs and had demonstrated an ability to manage the child's behavior effectively. The court noted that when L was removed from G's care, L required significant intervention and in-patient treatment, suggesting that G had provided some measure of stability. The court further found that G had training, professional experience, and education relevant to the child's care.

As to the allegations of physical abuse, the court concluded that ODHS did not establish that L's bruising was the result of *abusive* conduct. There was "no physical evidence or any description of any injury to the child resulting from a kick." The court characterized the photographs of L's injuries as unremarkable for a child of her age, especially considering her documented behavioral outbursts. Although the court found that G had engaged in inappropriate physical discipline, it found no evidence of physical or mental harm resulting from that conduct and concluded that the facts did not establish a risk to G that would authorize dependency jurisdiction:

> "THE COURT:  I can't find a current threat of serious loss or injury to the child. I cannot find a nexus between the allegedly risk-causing conduct and harm to the child, and I certainly don't think that there's any risk to this child at this time."

The court ultimately concluded that ODHS had not met its burden to establish jurisdiction under ORS 419B.100(1)(c) and dismissed the petition.

## ANALYSIS

Father argues that the juvenile court erred because the evidence was "sufficient" to support dependency

jurisdiction over L. That framing of the issue, however, does not align with the applicable standard of review on appeal. This court does not assess whether the evidence could support dependency jurisdiction as a matter of first impression, but rather whether there is *any evidence in the record* to support the juvenile court's express and implicit factual findings and whether those facts support the court's legal conclusions. *See A. J. G.*, 304 Or App at 228 n 4 (this court defers to the juvenile court's express and implicit findings if any evidence supports them). Jurisdiction under ORS 419B.100(1)(c) must be based on a *current threat of serious loss or injury* that is reasonably likely to be realized, and not merely on speculative or past concerns. *M. Q.*, 253 Or App at 785-86.

Here, the juvenile court concluded that ODHS failed to meet its burden on all four jurisdictional allegations against the guardian. As to allegation G—that G was "unable or unwilling to meet the child's mental health needs"—the court made detailed findings, concluding that "[t]he evidence was quite clear that she [had] done darn near anything she could do." The court emphasized that G had arranged for L to receive services through Kairos, worked with school personnel, attended therapy, and participated in coordinated care. In the court's words, "[L]iterally, the Kairos lady said, 'She's done everything she can do.'" The court added: "[E]verybody said this child's been getting care. Everybody said this child's been availed, you know, wraparound, home this, you know, advocate that. I mean, she's done all of this stuff." Those findings are supported by the record and reflect the court's conclusion that G had actively and consistently worked to manage L's complex behavioral and emotional needs over time.

In assessing whether there was a *present risk of harm* from allegation 4(G), the court found that L's condition *worsened significantly* after she was removed from G's care. Although acknowledging that it could not determine causation with certainty, the court stated that L's worsened condition was "suggestive evidence[] that the guardian was doing something that kept this child out of massive dangerous crisis ***." The court emphasized that that "left a huge

impression on this finder of fact." The court ultimately concluded that allegation 4(G) was not proven.

Regarding allegation 4(H)—that G lacked the skills, knowledge, motivation, or judgment to safely parent—the court rejected that claim as well, stating, "The evidence available to the court strongly suggests that [G] has training, on-the-job experience, other education to meet the child's mental health issues, her difficult behaviors, and other matters." Although the court criticized G's "old-fashioned" disciplinary views and urged her to abandon them, it explicitly concluded: "I don't find a present risk to the child." The court noted that G was regularly called upon by school personnel to de-escalate the child's behavior and that she testified credibly to her involvement.

As to allegation 4(I)—that G physically abused L—the court found insufficient evidence of any actual or potential harm to the child. The court noted testimony from caseworker Messner that the child had a small, faded bruise and a "horizontal pattern bruise," and that Dr. DeLeon had described the marks as "inflicted injury" but expressly distinguished that from an "abusive injury." The court concluded that the state "could not prove that her bruising was an abusive injury." The court also considered L's inconsistent statements and alignment with G during the proceedings, and stated that "[t]his, coupled with the child's recantations and her position taken in court that she was aligned with the guardian, calls into question the allegations of abuse." The court further observed that there was no evidence—testimonial, photographic, or medical—that a kick had resulted in injury. Ultimately, the court found that it wasn't "convincing" and it "couldn't find any conclusive injury of abuse."

Finally, as to allegation 4(J)—that G subjected the child to inappropriate discipline that resulted in harm—the court did not minimize G's conduct but found that the evidence did not establish harm. The court stated: "Yeah. It might have been inappropriate physical discipline. I had no evidence of harm, either mental or physical, and I'm not going to take that leap." The juvenile court emphasized that it was not willing to speculate and that it lacked sufficient

evidence to establish any nexus between the conduct and a risk to L that would authorize dependency jurisdiction.

In sum, the court determined with regard to all the asserted grounds for jurisdiction—4(G), (H), (I), and (J)—that there was not a "current threat of serious loss or injury to the child," there was no "nexus between the allegedly risk-causing conduct and harm to the child," and there was no risk to this child at the time of the hearing. The court acknowledged that G "need[ed] to figure out how to parent this child better" but found that "[t]his child need[ed] as many supportive parental figures as possible." The court concluded that it could not find a current threat and stated, "I can't find the nexus, and I don't think there's a present risk."

The juvenile court's express findings, based on credibility determinations and evidence in the record, are entitled to deference as required in all dependency jurisdiction appeals. *N. P.*, 257 Or App at 639; *A. J. G.*, 304 Or App at 228 n 4 (deferring to the juvenile court's express and implicit findings and credibility determinations if *any* evidence supports them). Viewed in the light most favorable to the juvenile court's decision, the record supports the conclusion that ODHS failed to prove, by a preponderance of the evidence, that the child's circumstances placed her at a current risk of serious loss or injury.

The judgment dismissing the petition for dependency jurisdiction is therefore affirmed.

Affirmed.