192 April 1, 2026 No. 255

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of Z. E.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*
*and*

Z. E.,
*Respondent,*

*v.*

M. B.,
*Appellant.*

Multnomah County Circuit Court
17JU07682;
Petition Number
112643;
D2022015;
A188820

Morgan Wren Long, Judge.

Argued and submitted February 18, 2026.

M. B. argued the cause and filed the briefs *pro se.*

Ginger Fitch argued the cause for respondent child. Also on the brief was Youth, Rights & Justice.

Stacy M. Chaffin, Assistant Attorney General, argued the cause for respondent Department of Human Services. Also on the brief were Dan Rayfield, Attorney General, and Paul L. Smith, Solicitor General.

Before Shorr, Presiding Judge, Powers, Judge, and O'Connor, Judge.

SHORR, P. J.

Affirmed.

**SHORR, P. J.**

In this juvenile dependency case, mother appeals from the juvenile court's order denying her motion to dismiss dependency jurisdiction. She assigns error to the court's finding that three of the jurisdictional bases have not been ameliorated and continue to place her child, Z, at current risk of serious loss or harm, and that dependency jurisdiction was therefore continued. We affirm.

In response to a motion to dismiss jurisdiction, when the permanency plan remains reunification, the Oregon Department of Human Services (ODHS) bears the burden of demonstrating that the bases for jurisdiction have not been ameliorated and that they continue to pose a threat of serious loss or injury to the child. *Dept. of Human Services v. D. L.*, 308 Or App 295, 302, 479 P3d 1092 (2020), *rev den*, 367 Or 668 (2021). The purpose "is not to relitigate the original allegations" but instead, "the focus is on whether the adjudicated bases for jurisdiction continue to support jurisdiction." *Id.* In reviewing the juvenile court's denial of a motion to dismiss for legal error, we "view the evidence, as supplemented and supported by permissible derivative inferences, in the light most favorable to the juvenile court's disposition and we assess whether the evidence was sufficient to permit the challenged determination." *Id.* at 297 (internal quotation marks omitted).

A thorough recounting of the procedural history and record in this matter is neither necessary nor helpful, given the voluminous record and the extensive testimony from dozens of witnesses over a 13-day hearing spanning the course of seven months. Z has been in substitute care with her maternal aunt since 2017 and jurisdiction was initially established in 2018. In 2022, mother filed a motion to dismiss jurisdiction. Shortly after, ODHS filed a subsequent dependency petition alleging an additional basis for jurisdiction. The juvenile court held a jurisdictional trial and found that the new allegation had been proved, and the court therefore continued jurisdiction in July 2023. The court did not hold a hearing on mother's motion to dismiss jurisdiction and denied the motion the same month.

Mother appealed both of those decisions, and we reversed and remanded in July 2024. *Dept. of Human Services v. M. B.*, 333 Or App 587 (2024) (nonprecedential memorandum opinion). We concluded that the juvenile court erred in failing to hold a hearing on mother's motion to dismiss the original jurisdictional bases, despite its conclusion that the establishment of the new jurisdictional basis necessarily prevented termination of the wardship. *Id.* at 601-02. We therefore remanded to the juvenile court to hold a hearing on mother's motion to dismiss, noting that mother had filed a subsequent motion to dismiss jurisdiction, which was scheduled for a hearing before the juvenile court. *Id.* at 602.[1]

On remand, the court heard testimony and arguments regarding mother's motion to dismiss all of the jurisdictional bases, three from the original judgment in 2018 and the additional one found in 2023:

"[2B]   The mother's mental health issues, which include trauma and emotional distress, interfere with her ability to safely parent the child. The mother must continue engaging in mental health services to rectify her mental health issues."

"[2C]   The mother's alcohol abuse, currently in remission, interferes with her ability to safely parent the child. The mother needs to continue a prolonged period of sobriety in order to safely parent the child."

"[2E]   There is no legal father."

"[3A]   As a result of the mother's chronic mental health issues and substance abuse disorder, among other things, the child experienced neglect and trauma while in the mother's care. As a result of the mother's chronic mental health issues, the child has continued to experience additional trauma caused by mother while in foster care. This has resulted in an extreme, potentially irreparable, breakdown in the parent child relationship. Return of the child to the mother, or forced contact between the child and the

---

[1] In the same opinion we additionally concluded that the evidence supported the juvenile court's determination that the new allegation had been proved, and therefore affirmed the jurisdictional judgment on that basis. *M. B.*, 333 Or App at 600-01. We reversed the permanency judgment (which maintained the plan of reunification) with respect to the juvenile court's finding that ODHS had made reasonable efforts; and we did not reach mother's argument that the court erred in determining that she had failed to make sufficient progress. *Id.* at 602-04.

mother against the child's wishes, would result in serious emotional harm and damage to the child."

Following the multi-day hearing, the court concluded that mother had successfully ameliorated basis 2C regarding her alcohol abuse, noting her achievement of a sustained period of sobriety, and therefore dismissed that basis for jurisdiction and vacated the orders requiring mother to engage in related treatment and UA testing. However, the court concluded that the other jurisdictional bases had not been ameliorated and continue to place Z at current risk of serious loss or harm. The court therefore denied the motion to dismiss jurisdiction and wardship.

On appeal, mother contests the court's findings that the jurisdictional bases have not been ameliorated. She asserts that the evidence elicited at the hearing demonstrates that no therapist agrees with the court that she has not rectified her mental health issues addressed in basis 2B, and that given the amelioration of her mental health issues and alcoholism, she is in a better position to address Z's ongoing trauma and estrangement than ODHS is, meaning basis 3A is no longer a concern.[2]

We conclude that the juvenile court did not err in determining that the jurisdictional bases had not been ameliorated and continue to place the child at current risk of serious loss or harm. With respect to basis 2B, the court found that mother "continues to exhibit a pervasive pattern of behavior that places [Z] at significant emotional and psychological risk." The court noted mother's conduct that had disrupted Z's life, including hostility, threats, and an inability to collaborate with professionals involved in Z's care, with the patterns persisting even after the completion of therapeutic work. Although mother is correct that several of her providers testified to her progress in treatment, and to the absence of an active serious mental health diagnosis, the juvenile court was not required to credit those reports, and indeed found the testimony of various providers to be colored by bias or lacking critical corroborating information. Mother has not challenged

---

[2] The parties appear to agree that, absent jurisdiction relating to mother's ability to care for Z, the fact that there is no legal father (basis 2E) does not create an independent risk of harm.

the court's credibility findings, nor has she requested that we exercise *de novo* review. We defer to the juvenile court's credibility assessments because they are supported by evidence in the record. *Dept. of Human Services v. A. J. G.*, 304 Or App 221, 228 n 4, 465 P3d 293, *rev den*, 366 Or 826 (2020).

The record otherwise contains sufficient evidence to support the juvenile court's findings. Mother's history of trauma and resulting emotional distress are well-documented throughout the record, as is her tendency to respond to stress and conflict in unproductive ways as a result. She has been reactive and combative with multiple professionals involved in the dependency matter and with her own family, including sending threatening and bullying messages, making unfounded allegations against her sister and her sister's family, improperly inserting herself into aspects of Z's life when explicitly told not to, and fixating on her interpretation of events that do not align with information she has been provided. Those behaviors have been ongoing throughout the life of the case, up through the hearing on the motion to dismiss. Multiple experts expressed that the way to assess the efficacy of treatment for mental health issues is to look at the individual's behavior and implementation of coping mechanisms. The court noted that mother had demonstrated some improvement in her behavioral patterns from the earlier years of the case—when she had engaged in physical aggression, prolonged verbal outbursts, and malicious allegations of sexual abuse—but that she continued to demonstrate a pattern of reactivity and dysregulation, in the form of written threats, formal complaints, and civil litigation. The court's findings are supported by the record.[3]

The same evidence supports the juvenile court's finding that basis 3A has also not been ameliorated, that

---

[3] In the final paragraph explaining its conclusion that the jurisdictional bases had not been ameliorated and continue to place Z at current risk of serious loss or harm, the court stated: "Ultimately, Mother's chronic behavioral and relational dysfunctions seemingly meet the very definition of a personality disorder: a pervasive pattern that negatively impacts functioning across multiple domains." Although the court may have gone too far in suggesting a current diagnosis that had not been identified by medical professionals, we conclude that the court's ultimate decision was rooted in mother's documented actions and behavioral patterns, and not any particular clinical label that may drive or explain those actions.

Z has continued to experience trauma caused by mother's chronic mental health issues. The record contains numerous accounts of mother's aggressive and bullying behavior negatively impacting Z, and multiple individuals testified that mother's dogged pursuit of legal action and continual challenges to Z's current placement have not ceased in response to evidence that they further reinforce Z's distress and desire to have no contact with mother. There was also significant evidence that forcing Z into therapy or contact with her mother, or the dismissal of jurisdiction, would be detrimental to Z. Z's treating counselor testified that if jurisdiction were dismissed and Z were immediately returned to mother's care, it would have a devastating effect on Z's emotional health and would damage any chance of a future relationship between them. Dr. Rybicki, a psychologist who performed a number of psychological exams of mother, was generally supportive of addressing past issues in therapy in order to support a healthier future relationship and reduce the chance of the toxic dynamics that had permeated earlier generations from continuing, but was of the strong opinion that dismissing jurisdiction entirely given the current status of the relationship would be a mistake.

We therefore conclude that the juvenile court did not err in denying mother's motion to dismiss jurisdiction.[4]

Affirmed.

---

[4] In a separate opinion, we recently affirmed the juvenile court's June 2025 permanency judgment continuing the plan of reunification, which concluded that ODHS had engaged in reasonable efforts to reunify mother and Z, and that mother had made insufficient progress for Z to be safely returned to her care. *Dept. of Human Services v. M. B.*, 347 Or App 890 (2026) (nonprecedential memorandum opinion).