Argued and submitted March 13, reversed August 14, 2013

In the Matter of C. E. W.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

C. J. T.,
*Appellant.*

Lane County Circuit Court
11564J;
Petition Number 11564J02;
A152344 (Control)

In the Matter of G. M. Y.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

C. J. T.,
*Appellant.*

Lane County Circuit Court
11563J;
Petition Number 11563J02;
A152345

In the Matter of T. B. T.,
fka T. M., a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

C. J. T.,
*Appellant.*

Lane County Circuit Court
05662J;
Petition Number 05662J05;
A152347

308 P3d 307

Michael Vergamini argued the cause and filed the brief for appellant.

Karla H. Ferrall, Assistant Attorney General, waived appearance for respondent.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Duncan, Judge.

WOLLHEIM, J.

## WOLLHEIM, J.

Mother appeals from jurisdictional and dispositional judgments taking jurisdiction over her three children, C, T, and G, based on a finding that mother's use of marijuana endangered the welfare of the children.[1] She argues that the court erred in concluding that her use of marijuana interfered with her ability to parent when the record lacked evidence of marijuana use at the time of the fact-finding hearing and lacked evidence of a nexus between mother's marijuana use and a current threat of harm to the children.[2] We agree with mother and reverse the judgments.

We have discretion to review a juvenile dependency proceeding *de novo* in exceptional cases, ORS 19.415(3)(b), ORAP 5.40(8)(c). Mother has not requested that we exercise *de novo* review, and we conclude that it is unnecessary to do so.[3] Accordingly, we "view the evidence as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record was legally sufficient to permit that outcome." *Dept. of Human Services v. N. P.*, 257 Or App 633, 639, 307 P3d 444 (2013); ORS 419B.100(1)(c).

The following facts are undisputed. Mother has three children, C, T, and G, respectively ages one, nine, and 10 years old at the time of the hearing. Mother was the custodial parent of all three children at the time the Department of Human Services (DHS) issued a "Protective Action" on May 24, 2012, to place the children with other family members during a 30-day investigation.[4] The protective order

---

[1] ORS 419B.100(1) provides that "the juvenile court has exclusive original jurisdiction in any case involving a person who is under 18 years of age and * * * (c) [w]hose condition or circumstances are such as to endanger the welfare of the person or of others."

[2] Mother also raises two additional assignments of error. Because we agree with mother's first assignment of error, we do not reach the other two.

[3] Neither the Department of Human Services nor any of the fathers appeared before this court.

[4] ORS 419B.150 to 419B.175 address when protective custody of a juvenile is authorized, the legal status of a child in protective custody, court jurisdiction over a child in protective custody, place of detention, parental notification requirements, release, and procedure when the child is not released.

stated that the safety threat was as follows: "Caregivers [*sic*] behavior is violent and/or they will not control behavior. Family situation results in no adult in the home performing parenting duties." On June 1, 2012, mother's counsel notified DHS that the protective action was not voluntary and demanded that DHS file a petition in the juvenile court by June 5, 2012. DHS filed a dependency petition for each of the children on June 4, 2012.

DHS alleged that each child was within the jurisdiction of the court, pursuant to ORS 419B.100(1)(c), by reason of four circumstances and conditions that endangered the children's welfare. The circumstances and conditions alleged for each child were substantially the same: (1) that the child had been subject to neglect; (2) that the child had been subject to mental or emotional injury because of mother's erratic, violent, and unpredictable behaviors, including throwing objects around the home and acting in

---

ORS 419B.150 provides, in part:

"(1) A child may be taken into protective custody by a peace officer, counselor, employee of the Department of Human Services or any other person authorized by the juvenile court of the county in which the child is found, in the following circumstances:

"(a) When the child's condition or surroundings reasonably appear to be such as to jeopardize the child's welfare;

"(b) When the juvenile court, by order indorsed on the summons as provided in ORS 419B.839 or otherwise, has ordered that the child be taken into protective custody; or

"(c) When it reasonably appears that the child has run away from home.

"(2)(a) Before issuing an order under subsection (1)(b) of this section, the court shall review an affidavit sworn on information and belief provided by a peace officer, counselor or employee of the department or other person authorized by the juvenile court that sets forth with particularity the facts and circumstances on which the request for protective custody is based, why protective custody is in the best interests of the child and the reasonable efforts or, if the Indian Child Welfare Act applies, active efforts made by the department to eliminate the need for protective custody of the child.

"(b) Except as provided in paragraph (c) of this subsection, an order directing that a child be taken into protective custody under subsection (1) of this section shall contain written findings, including a brief description of the reasonable efforts or, if the Indian Child Welfare Act applies, active efforts to eliminate the need for protective custody of the child that the department has made and why protective custody is in the best interests of the child.

"(c) The court may issue an order even though no services have been provided if the court makes written findings that no existing services could eliminate the need for protective custody of the child and that protective custody is in the best interests of the child."

a threatening manner toward the child; (3) that the child's father is unable to protect the child; and (4) that mother's use of alcohol and/or marijuana interferes with her ability to parent and presents a threat of harm to the child.

Following a jurisdictional hearing, the juvenile court found sufficient evidence to support jurisdiction for each of the children based solely on the allegation concerning mother's use of alcohol and/or controlled substances.[5] The focus at the time of the hearing was on mother's use of marijuana.

On appeal, mother argues that the trial court erred in determining that the three children were within the jurisdiction of the court under ORS 419B.100(1)(c) when DHS failed to prove that the children's welfare was at risk of a serious loss or injury or to present any evidence that mother was using marijuana at the time of the hearing. Mother argues that DHS presented only a speculative argument that mother's marijuana use created a *per se* risk to the safety of the children, and the record lacks evidence to establish a current threat of harm to any particular child. Finally, mother argues that, even if mother's marijuana use created a *per se* likelihood of "a harmful environment" for any child, DHS still failed to meet its burden to show that the harm was, in fact, present at the time of the jurisdictional hearing.

Juvenile court jurisdiction is appropriate under ORS 419B.100(1)(c) when a child's condition or circumstances endanger the welfare of the child. To "endanger" the welfare of a child means to expose the child to conditions or circumstances that present a current threat of serious loss or injury. *Dept. of Human Services v. M. Q.*, 253 Or App 776, 785, 292 P3d 616 (2012). The "key inquiry in determining whether condition[s] or circumstances warrant jurisdiction is whether, under the totality of circumstances, there is a reasonable likelihood of harm to the welfare of the child,"

---

[5] The juvenile court found that DHS proved the allegation that "mother's use of alcohol and/or controlled substances" was the condition that presented a threat of harm to the children. The testimony did not establish that mother's use of alcohol presented any threat of harm to the children. Nonetheless, the juvenile court found that that allegation was proved by the preponderance of the evidence. This is not the first time that this court has discussed the phrase "and/or" and noted that "[t]here simply is no way to give effect to both words, because 'and' leads to one result, and 'or' leads to the other, and there is no middle ground." *SAIF v. Donahue-Birran*, 195 Or App 173, 178, 96 P3d 1282 (2004).

*Dept. of Human Services v. C. Z.*, 236 Or App 436, 440, 236 P3d 791 (2010) (internal quotation marks omitted), and DHS has the burden to demonstrate a nexus between the allegedly risk-causing conduct and the harm to the child, *Dept. of Human Services v. D. S. F.*, 246 Or App 302, 314, 266 P3d 116 (2011) ("Evidence that a child has been exposed to a parent exhibiting the adverse effects of intoxication is not, in and of itself, a basis for juvenile court jurisdiction over a child[;] * * * there must be evidence that the exposure puts the child at risk of serious loss or injury."). In addition, DHS has the burden to show that the risk of harm is present, at the time of the hearing and not merely speculative. *M. Q.*, 253 Or App at 785 (citing *Dept. of Human Services v. A. F.*, 243 Or App 379, 386, 259 P3d 957 (2011)).

We first review the record for evidence that mother was using marijuana at the time of the hearing. Mother's two sons, G and T, and each of their fathers testified that they smelled marijuana in mother's house and believed that she was using it. G and T also testified that they had seen mother using marijuana. There was also testimony that the boys reported to others their beliefs and concerns that mother was using marijuana. However, neither child testified as to when mother had last used marijuana. G's father, Young, testified that he smelled marijuana in mother's house in March or April of 2012. T's father, Tarter, testified that he smelled it in March 2012. Mother testified that she last used marijuana in March or April 2012. The jurisdictional hearing was held on July 30, 2012.

The record also contains the results of three drug tests that mother took in July 2012, all of which were negative for any controlled substances. Although the results from mother's second July 2012 drug test show that she failed that test due to a diluted specimen, it was administered a short time between the other two tests with negative results and does not support the conclusion that mother was using controlled substances at that time.

We conclude that the record lacks legally sufficient evidence to establish that mother used marijuana after April 2012, which is at least one month before DHS issued the protective order and filed its petitions for jurisdiction, and approximately three months before the fact-finding hearing.

Given the lack of legally sufficient evidence that mother used marijuana after April 2012, there is no evidence in the record establishing a nexus between mother's marijuana use and any current threat of harm to the children. The juvenile court relied solely on the allegation concerning past marijuana use. There is also no evidence in the record establishing that mother abused alcohol or that her use of alcohol created a threat of harm to the children.

Mother argues that, because the court concluded that there was insufficient evidence to prove the other allegations—that mother neglected the children in failing to provide G's mental health services or in making C's siblings responsible for providing her essential care and necessities, or that the children were subject to mental or emotional injury as a result of mother's conduct—the record lacks evidence to establish how mother's past use of marijuana caused her to act or fail to act in a manner that endangered the children. We agree. "The fact that a parent engages in behavior that could negatively affect his or her parenting does not necessarily mean that the behavior can serve as a basis for juvenile court jurisdiction over a child." *A. F.*, 243 Or App at 387. Where the evidence could support different factual findings, we presume that the court reached findings of fact consistent with its conclusions. *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968). However, in the absence of evidence linking mother's past marijuana use to a current risk of harm to the children, the requirements under ORS 419B.100(1)(c) to establish juvenile jurisdiction over mother's three children are not satisfied. *C. Z.*, 236 Or App at 442 (rejecting jurisdiction where the record lacked evidence showing the mother's use of marijuana was a condition or circumstance that posed any risk to her children).

Reversed.