Argued and submitted July 30, affirmed October 14, 2020, petition for review denied February 19, 2021 (367 Or 559)

In the Matter of B.-L. F.,
aka B.-L. T. F., a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

L. E. F.,
*Appellant.*

Linn County Circuit Court
19JU04004; A171952 (Control)

In the Matter of D.-L. F.,
aka D.-L. A. F., a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

L. E. F.,
*Appellant.*

Linn County Circuit Court
19JU04003; A171953

476 P3d 119

Father appeals from an order continuing the jurisdictional hearing date beyond the 60-day deadline of ORS 419B.305(1) and from the jurisdictional judgment. The juvenile court asserted jurisdiction over father's children after considering, among other things, evidence that father abused alcohol, had anger control issues, and engaged in inappropriate discipline. Father assigns error to the court's assumption of jurisdiction. He argues that there was insufficient evidence to support jurisdiction and that the court denied him due process when it (1) failed to hold a jurisdictional hearing within the 60-day period; (2) failed to provide him with parenting time; and (3) required a separate modification proceeding to proceed before the juvenile dependency cases concluded. *Held*: The juvenile court did not err. The record was legally sufficient to support the court's jurisdiction over father's children, and good cause justified holding the jurisdictional hearing outside of the 60-day period. Father failed to preserve the remainder of his due process arguments because they arose from his separate domestic relations proceeding.

Affirmed.

Michael B. Wynhausen, Judge.

Shallon Halttunen argued the cause for appellant. Also on the brief was Weatherford Thompson, P.C.

Erin K. Galli, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before DeHoog, Presiding Judge, and Mooney, Judge, and Hadlock, Judge pro tempore.

MOONEY, J.

Affirmed.

**MOONEY, J.**

Father appeals from judgments that determined, under ORS 419B.100(1)(c), that his children, B and D, were within the jurisdiction of the juvenile court.[1] The court asserted jurisdiction after considering (1) mother's admission to the single allegation against her (lack of a custody order and inability to "lawfully" protect the children from their father) and (2) evidence received at trial concerning the allegations against father (alcohol use, inappropriate discipline, anger control issues). Father assigns error to the juvenile court's assumption of jurisdiction over his children, arguing, first, that there was insufficient evidence to support jurisdiction[2] and, second, that the court denied him due process when it failed to hold a jurisdictional hearing within the requisite 60-day time period, failed to provide him with parenting time, and required a custody modification proceeding in a separate domestic relations case to proceed before the juvenile cases were concluded.[3] The Department of Human Services (DHS) counters that the record was legally sufficient to support the court's assumption of jurisdiction over B and D, especially given the court's specific credibility findings. Moreover, DHS argues, the procedural discrepancies are not properly before us and, in any case, did not combine to violate father's liberty interest in raising his children. We agree with DHS as to the court's assertion of jurisdiction over B and D, as well as its argument that father only partially preserved his due process argument (*i.e.*, only the 60-day trial deadline issue is preserved). Because we also reject the preserved portion of father's due process argument, we affirm.

---

[1] The parties agree that, despite the subsequent dismissal of the challenged judgment of jurisdiction, this matter is not moot. We agree. *Dept. of Human Services v. A. B.*, 362 Or 412, 426, 412 P3d 1169 (2018).

[2] Father presents four arguments as to why the court erred in asserting jurisdiction. We address the first three, but conclude that he did not preserve his fourth argument—that an allegation admitted by mother is not sufficient to support jurisdiction—and thus reject that argument without discussion.

[3] The juvenile court consolidated the juvenile dependency cases with the parents' domestic relations case as required by ORS 419B.806. Father has not appealed any ruling in that domestic relations matter.

## I.   STANDARD OF REVIEW

Father asks us to review this matter *de novo*, arguing that this is an exceptional case that qualifies for such review. We have discretion whether to exercise *de novo* review in juvenile dependency proceedings, other than termination proceedings. ORS 19.415(3)(b). However, we exercise that discretion only in exceptional cases, ORAP 5.40 (8)(c), and we do not regard this as such a case. Accordingly, we defer to the juvenile court's findings of historical fact if they are supported by any evidence. *Dept. of Human Services v. C. L. H.*, 283 Or App 313, 315, 388 P3d 1214 (2017). We "view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the [juvenile] court's disposition and assess whether, when so viewed, the record was legally sufficient to permit that outcome." *Dept. of Human Services v. D. A. N.*, 258 Or App 64, 65, 308 P3d 303, *rev den*, 354 Or 490 (2013) (citing *Dept. of Human Services v. N. P.*, 257 Or App 633, 307 P3d 444 (2013)). We state the facts in accordance with that standard of review.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Mother and father divorced in 2013, at which time they were granted joint custody of their daughters, D (nine years old at the time of divorce) and B (four years old at the time of divorce). After the divorce, the children lived primarily with mother, spending three weekends each month with father. In January 2019, father initiated a modification proceeding in which he sought an order awarding him sole legal custody of the children with reduced parenting time for mother. In May 2019, B reported to someone at school that father had slapped her and thrown her to the ground, which, in turn, resulted in a report to DHS. DHS investigated the report and filed a petition in juvenile court. DHS did not immediately remove the children from father's care, instead allowing them to spend the Memorial Day weekend together. However, at the shelter hearing, DHS recommended removal and the children were placed in mother's care at that time. D was 13 years old and B was nine years old. The juvenile cases were later consolidated with

the domestic relations case. Factfinding occurred over the course of two days in early August 2019.

The juvenile court accepted mother's admission of the single allegation as to her in the dependency petitions and held an evidentiary hearing on the allegations as to father. The court received documentary evidence and heard testimony from several witnesses including, Pawlik, a DHS caseworker; Studer, an Emergence drug and alcohol assessment counselor; Cloud, a Linn County qualified mental health professional; Dr. Stoltzfus, PsyD, a clinical psychologist; DeVaney, the children's cousin; Hook, father's former girlfriend; D; and father.

At the conclusion of the factfinding proceeding, the court made findings and asserted jurisdiction over the children on four bases: (1) mother's lack of sole custody and associated inability to protect the children from father, (2) father's alcohol abuse, (3) father's use of inappropriate discipline, and (4) father's anger control problem.

## III.   ANALYSIS: SUFFICIENCY OF THE EVIDENCE

In his first assignment of error, father argues that there was insufficient evidence to support jurisdiction. A juvenile court may assert jurisdiction over a child under ORS 419B.100(1)(c) when it finds that the child's conditions or circumstances endanger the child. A child is endangered when he or she is exposed to conditions or circumstances that "present a current threat of serious loss or injury." *Dept. of Human Services v. C. J. T.*, 258 Or App 57, 61, 308 P3d 307 (2013). DHS must establish by a preponderance of the evidence a connection between the parents' allegedly risk-causing conduct and the harm to the children, and it must also establish that the threat of harm is current and non-speculative. *Id.* at 62. "[I]t is not sufficient for the state to prove that the child's welfare was endangered sometime in the past." *Dept. of Human Services v. M. Q.*, 253 Or App 776, 785, 292 P3d 616 (2012).

### A.   *Alcohol Use*

With respect to his use of alcohol, father's testimony about the amount of alcohol he consumed while caring for his children was at odds with the testimony of D, who described

father as being "drunk all the time whenever we'd go out there" after drinking "every night" the children stayed with him on the weekends. D also described in detail the effects of father's drinking, including that he had red and "puffy" eyes, and that he would "stumbl[e]" and "fall[ ] over."

Father denies alcohol abuse and, in any event, says that he stopped using alcohol altogether after the children were removed from his care. The juvenile court found D's testimony about father's alcohol use patterns more credible than father's testimony about his alcohol use patterns, in part, because D's testimony was consistent with what she told DHS officials previously and because "father lies as a matter of course in order to put himself in the best light possible in any given situation." The court also noted that father had not been honest during his drug and alcohol assessment when he told the evaluator that DHS was not involved with his family. The evaluator, Studer, testified that, once she learned that DHS was involved, she obtained collateral information from DHS, and changed her recommendation from no treatment to treatment for father. Stoltzfus testified that father's abstention from alcohol since the time DHS intervened is not significant, remarking that "anybody can *** hold it together for two months." In light of that evidence, we conclude that the juvenile court's inference concerning the likelihood and imminence of father's further alcohol abuse in conjunction with his parenting time is supported by the record.

B.  *Discipline*

Father next argues that DHS failed to meet its burden to establish that he used inappropriate discipline with the children. The testimony focused on two incidents: father (1) dragging D down the stairs two years before DHS involvement, leaving bruises on her hips, and (2) slapping B twice and pushing her to the ground a month before DHS became involved, leaving a red mark and causing B to cry. Father denies the first incident and notes that D changed her story about the timing of that incident, initially reporting to the DHS caseworker that it had happened within the previous month and then later testifying that it had been two years before. D rated the pain she experienced from being dragged

as a "5" on a scale of "0 to 10." She testified that her bruises lasted a few days. The court resolved the discrepancy between D's testimony and that of father when it made its credibility determinations. As for the slapping incident, the court acknowledged not receiving B's testimony. But father admitted to slapping B, and D testified that she heard the incident and saw a red mark on B's face that lasted for 30 to 60 minutes and that she observed B "bawling" afterward. Additionally, when making its findings, the juvenile court observed that the children are "clearly terrified" of father.

Reasonable physical force used by a parent to discipline a child is not unlawful. ORS 161.205(1)(a). In the context of mandatory child abuse reporting, "abuse" does not include reasonable discipline unless the discipline results in, among other things, "any physical injury to a child which has been caused by other than accidental means" and "any mental injury to a child, which shall include any observable and substantial impairment of the child's mental or psychological ability to function caused by cruelty to the child[.]" ORS 419B.005(1)(a)(A), (B). We were guided by that definition in *G. A. C. v. State ex rel Juv. Dept.*, 219 Or App 1, 9-12, 182 P3d 223 (2008), as we conducted *de novo* review and reached conclusions about whether "inappropriate discipline" was used in that case. Because "physical injury" is not defined in the juvenile dependency code, we find helpful guidance in other sections of the Oregon Revised Statutes. For example, ORS 161.015(7) defines "physical injury" as "impairment of physical condition or substantial pain" for purposes of the criminal code. In this case, there is evidence in the record from which the juvenile court could reasonably find that each child experienced substantial pain when dragged and slapped, respectively, by father and, therefore, that such force used in the course of "discipline" was not reasonable.

C.   *Anger Control*

The sufficiency of the evidence with respect to father's alleged anger control problem is a closer call. There was testimony that father had responded with anger to the DHS caseworker; however, that may simply reflect his frustration with the process. Stoltzfus, the clinical psychologist

who evaluated father, testified that father's Minnesota Multiphasic Personality Inventory (MMPI) test results suggest that father is "not generally an angry person." However, he also acknowledged that father's "overcontrolled hostility index" was elevated, "suggesting that if things are pushed too far * * * that he would do something rather dramatic and ineffective * * * [a]nd, occasionally may do something either inappropriate or ineffective, you don't know what happens with that." D described her father as "mean" when he drank alcohol and said that she and B were afraid of their father because he drank and was mean most days they spent with him. Again, we cannot say on this record, given the credibility findings of the court, that the court's conclusion was not supported by the evidence as a matter of law.

## IV.   ANALYSIS: DUE PROCESS

In his second assignment of error, father argues that the juvenile court deprived him of his fundamental liberty interest in raising his children without due process. He specifically argues that the court did so when it (1) set the jurisdictional trial outside the statutory 60-day time limit, (2) denied him parenting time with his children, and (3) proceeded with the consolidated domestic relations modification hearing while the juvenile dependency cases were still open.

We conclude that the juvenile court did not err by finding good cause to reschedule the trial beyond the 60-day deadline, given that the court was in the middle of a different trial and that rescheduling the witnesses to testify would require time and notice. Also, the trial was rescheduled to a date only seven judicial days later. The court's finding of good cause legally supported the short delay and, like *State v. Tatarinov*, 211 Or App 280, 289, 155 P3d 67, *rev den*, 342 Or 727 (2007), that delay did not violate father's due process rights.

Finally, we agree with DHS that father did not preserve his remaining due process arguments. Father's motion to postpone the domestic relations proceeding was not made in these juvenile dependency cases, even though it was brought to the juvenile court's attention at the September 6,

2019, dispositional hearing. Father has not appealed the dispositional judgments and he has not filed an appeal in the domestic relations case. Although there is significant overlap between dependency cases and domestic relations cases concerning the same children, "[c]onsolidation does not merge the procedural or substantive law of the individual actions." ORS 419B.806(3). We therefore cannot, and do not, address whether the court violated father's due process rights by denying him parenting time with his children or by denying his motion to postpone the domestic relations modification hearing.

Affirmed.