***This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).***

Submitted May 10, affirmed July 12, petition for review denied October 5, 2023
(371 Or 476)

In the Matter of A. P.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

A. P.,
*Appellant.*

Marion County Circuit Court
22JU03070; A179820

Tiffany Underwood, Judge pro tempore.

Shannon Storey, Chief Defender, Juvenile Appellate Section, and Sean Connor, Deputy Public Defender, Office of Public Defense Services, filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Jon Zunkel-deCoursey, Assistant Attorney General, filed the brief for respondent.

Before Powers, Presiding Judge, and Hellman, Judge, and Armstrong, Senior Judge.

POWERS, P. J.

Affirmed.

**POWERS, P. J.**

In this juvenile dependency case, mother appeals from a juvenile court judgment asserting jurisdiction over her five-month-old child, A. The juvenile court took jurisdiction under ORS 419B.200(1)(c) based on its determination that the following allegations were proven by a preponderance of the evidence: (1) mother's substance abuse interferes with her ability to safely parent; (2) mother's violent behaviors place A at risk of harm; (3) mother fails to meet A's supervision needs; (4) mother's symptoms of mental instability interfere with her ability to safely parent; and (5) A has no legal father. On appeal, mother challenges all five bases, arguing that there is insufficient evidence to establish jurisdiction on each allegation. She also asserts that the court erred in admitting over her hearsay objection a drug-detection test from A's birth. The Department of Human Services (DHS) concedes that admitting the document was error, and we accept that concession. We conclude, however, that the juvenile court's evidentiary error was harmless. Accordingly, for the reasons explained below, we affirm.

A juvenile court may assert dependency jurisdiction under ORS 419B.100(1)(c) when it finds, under the totality of circumstances, that the child's condition or circumstances endanger the child's welfare. *Dept. of Human Services v. C. J. T.*, 258 Or App 57, 61, 308 P3d 307 (2013). On appeal of a judgment asserting dependency jurisdiction, we determine whether, on the record before it, the juvenile court erred in making the statutorily prescribed determination. *Dept. of Human Services v. N. P.*, 257 Or App 633, 639, 307 P3d 444 (2013). In reviewing the judgment on appeal, we view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the juvenile court's disposition to assess whether, when so viewed, the record was legally sufficient to permit that outcome. *Id*. We review the facts in accordance with that standard. Because the parties are familiar with them, we only briefly recount some of the facts as they relate to each respective allegation for this nonprecedential memorandum opinion.

Mother has two children, K (age four) and A (age five months); only A is subject to this appeal. Much of the evidence presented at the dependency hearing came from grandparents' testimony, which the court found to be truthful even though "both sought to minimize their concerns." As described below, there is legally sufficient evidence in the record to support each of the bases for juvenile court jurisdiction.

*Substance Abuse*: The juvenile court determined that there was evidence to support a finding that mother "abused drugs for a significant period of time." Mother admitted that she used marijuana frequently but denied other drug use and refused to participate in substance abuse treatment. Grandfather believed mother was using substances because of certain smells in the home, the anger and violence she displayed, and because she was often passed out to the point that it was difficult to wake her. It was not uncommon for grandfather to find A in the mornings crying, with mother asleep and unable to be awakened.

Grandmother found a pipe and bag of white crystals in the home grandparents shared with mother and A. She testified that she hoped mother would enter rehab to get help. Mother's sister testified that she sometimes saw mother buying spray cans but did not know what they were for, and that it was common to see mother passed out and unable to wake up.

*Violent behaviors*: The juvenile court found that mother's "pattern of engaging in physically violent behaviors while her children are in the same room, the same car, and especially when she is holding them presents a non-speculative risk of harm to [A]." Although they owned the home they shared with mother and A, grandparents moved into a shed in the backyard due to mother's violent behaviors. In the past two years, grandfather called the police about once a month due to violence and arguing between mother and other family members. K and A were present during the arguments and physical violence.

On various occasions, mother shoved, slapped, and pinched grandmother. On one occasion, mother was in the car with grandmother and both kids when she grabbed

grandmother's arm so hard that it caused a large bruise. In June 2022, grandmother filed for a restraining order after mother punched her in the stomach. Grandmother filed the petition because she was concerned mother was going to hurt her more and explained in the petition that mother threatened to kill her and grandfather if they messed up mother's housing application.

*Supervision*: The juvenile court found that mother failed to provide the necessary supervision of A and that other adults were routinely responsible for providing for A's care. A DHS social service specialist described that the home was in disarray and was difficult to get through because of the clutter. Both children lacked basic hygiene; A had a lot of dirt underneath his fingernails, toenails, and in between the crevices of his skin. After DHS took jurisdiction of A, mother failed to attend many of the scheduled visitations with A. On two occasions when she did attend, mother almost fell asleep while holding A, nearly dropping him.

Mother was a "heavy sleeper" and did not always wake up when A needed care. On some occasions, A was crying in the crib next to mother, and she did not wake up despite the lights being turned on and her family shouting her name for several minutes. Grandfather often fed and cared for A when he came into the house in the mornings and A was crying and mother was sleeping.

*Mental Health*: The juvenile court found that, although mother did not have a mental health diagnosis, she "exhibited symptoms of mental instability, including anger and rage, agitated or anxious behaviors, confused thinking, and substance abuse."

Grandfather testified that, due to mother's violent and erratic behavior, he called the police for help nearly every month. He did not know if that behavior was due to drug use or mental-health issues, but that she was not "sane" when acting that way. Mother also sent long, erratic text messages to DHS caseworkers as they attempted to set up visitations with A or to offer mother services. The messages often accused family members of lying about her and threatened to sue individual caseworkers and DHS.

Regarding mother's fifth challenge, we conclude that the record is legally sufficient to support the juvenile court's determination that A has no legal father.[1]

*Exhibit 6*: In addition to challenging the sufficiency of the evidence for all of the jurisdictional bases, mother also assigns error to the juvenile court's ruling that admitted Exhibit 6, which was a report of the blood test of A's umbilical cord at the time of his birth. The blood test showed that A tested positive for methamphetamines and amphetamines. DHS concedes that the court erred by admitting that exhibit over mother's hearsay objection but asserts that the error was harmless.

An evidentiary error is considered harmless and therefore is not a basis for reversal if "there is little likelihood that the particular error affected the verdict." *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003); *see also* ORS 19.415(2) ("No judgment shall be reversed or modified except for error substantially affecting the rights of a party."). That is, the erroneous admission of evidence is harmless if it would be regarded as duplicative or unhelpful to the court's deliberations. *Davis*, 336 Or at 33.

As described above, the drug-test evidence was duplicative of other evidence showing that mother's substance abuse supported the court's assertion of jurisdiction. Mother admitted that she frequently smoked marijuana, and grandmother found a pipe and crystals in the home and attributed mother's violent outbursts to drug use. Grandfather believed mother used drugs based on smells in the home and because she stayed awake all night, and mother's sister testified that she often saw mother passed

---

[1] Although mother also assigns error to the juvenile court's ruling that A was within its jurisdiction on the ground that "[t]he child has no legal father," she does not specifically set out where she preserved any challenge to that basis for jurisdiction, nor does she provide any developed argument specific to that jurisdictional ground other than one sentence asserting that A's "lack of a legal father was not independently sufficient to give rise to jurisdiction." That undeveloped argument does not provide a basis for reversal, and we do not address it. *See Beall Transport Equipment Co. v. Southern Pacific*, 186 Or App 696, 700 n 2, 64 P3d 1193, *adh'd to as clarified on recons*, 187 Or App 472, 68 P3d 259 (2003) ("[I]t is not this court's function to speculate as to what a party's argument might be. Nor is it our proper function to make or develop a party's argument when that party has not endeavored to do so itself.").

out and unable to wake up. Thus, although the court erred by admitting Exhibit 6 over mother's hearsay objection, the error had little likelihood of affecting the outcome.

Viewing the evidence in the light most favorable to the juvenile court's disposition and affording all permissible derivative inferences, we conclude that the record is legally sufficient to permit the court's determination that the allegations above were proven by a preponderance of the evidence, interfered with mother's ability to safely parent, and endangered A's welfare. Accordingly, the juvenile court permissibly asserted jurisdiction over A.

Affirmed.