Argued and submitted June 12, reversed July 26, 2023

In the Matter of Z. M.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

M. M.,
*Appellant.*

Douglas County Circuit Court
22JU03405; A180452

534 P3d 308

On mother's appeal from a juvenile court judgment asserting dependency jurisdiction over her child, Z, mother challenges the sufficiency of the evidence to prove each of the jurisdictional bases as well as the court's ultimate determination that it had dependency jurisdiction. The first jurisdictional basis was that mother had exposed Z to "violence." The second jurisdictional basis was that mother had another child, C, for whom she was not a parental resource and that the conditions and circumstances that were the basis for mother not having custody of C, specifically domestic violence and substance abuse, had not changed or been ameliorated and interfered with mother's ability to safely parent Z. The third jurisdictional basis was derivative of the other two. *Held*: The juvenile court erred in asserting jurisdiction over Z, because the evidence was insufficient to prove a current threat of serious loss or injury to Z on the asserted jurisdictional bases.

Reversed.

Ann Marie Simmons, Judge.

Sarah Peterson, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Shannon Storey, Chief Defender, Juvenile Appellate Section, Office of Public Defense Services.

Robert Hansler, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Jona J. Maukonen, Assistant Attorney General.

Before Aoyagi, Presiding Judge, and Lagesen, Chief Judge, and Jacquot, Judge.

AOYAGI, P. J.

Reversed.

**AOYAGI, P. J.**

Mother appeals the juvenile court's judgment asserting dependency jurisdiction over her child, Z, and making Z a ward of the court. Mother challenges each of the three jurisdictional bases found by the court, as well as the court's ultimate ruling that it had dependency jurisdiction.[1] As explained below, we agree with mother that it was error to assert jurisdiction over Z on this record. We therefore reverse.

ORS 419B.100(1)(c) allows a juvenile court to assert dependency jurisdiction over a child and make the child a ward of the court when it finds that the child's conditions or circumstances endanger the child's welfare, considering the totality of the circumstances. *Dept. of Human Services v. C. J. T.*, 258 Or App 57, 61, 308 P3d 307 (2013). To establish jurisdiction, the Department of Human Services (DHS) must prove that the child's conditions or circumstances "present a current threat of serious loss or injury" that is nonspeculative and reasonably likely to be realized. *Id.* at 61-62. When a parent's conduct is at issue, DHS must prove a causal connection between that conduct and the threatened harm to the child. *Dept. of Human Services v. L. E. F.*, 307 Or App 254, 258, 476 P3d 119 (2020), *rev den*, 367 Or 559 (2021).

Our task on appeal is to "view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record was legally sufficient to permit that outcome." *Dept. of Human Services v. N. P.*, 257 Or App 633, 639, 307 P3d 444 (2013). We rely on the court's explicit factual findings if supported by evidence in the record, as well as any implicit factual findings necessary to the disposition.[2] *Id.* at 639-40.

---

[1] Mother also assigns error to the denial of her motion to dismiss at the close of the state's evidence, but we do not address that assignment, both because of our disposition and because the parties seem to agree that we need not address it in this posture.

[2] Mother has not requested *de novo* review, which we have "sole discretion" whether to provide, ORS 19.415(3)(b), and will provide only in "exceptional cases," ORAP 5.40(8)(c). We therefore apply the regular standard of review.

Here, in October 2020, the juvenile court asserted dependency jurisdiction over mother's then 10-month-old son, C, based on mother's admissions that she had exposed C to domestic violence (by C's father) and that substance abuse interfered with her ability to safely parent C. Mother has since failed to meaningfully engage in services for domestic violence or substance abuse. On July 4, 2021, Z was born. Z lived with mother for the first year of her life. DHS did at least two assessments and found no reason to remove Z. On July 20, 2022, mother and a man named Krueger had a public altercation that resulted in two 9-1-1 calls. DHS removed Z from mother's care at that time. After a three-day trial in October 2022, the juvenile court asserted dependency jurisdiction over Z on three bases, each of which we address in turn.

## ALLEGATION A

The juvenile court found as a basis for jurisdiction that Z "has been exposed to violence" by mother.[3] That finding was based solely on the July 2022 altercation, which the court described as "a frankly quite flagrant physical altercation in public with the child." The record evidence does not support that finding.

There is evidence that mother was involved in a loud verbal altercation with Krueger on a residential sidewalk in Roseburg; that mother was carrying Z on her left hip at the time; that mother was yelling and screaming at Krueger to leave and to get away from her; that two people called 9-1-1; and that, upon arrival, the sheriff's deputy saw mother and Krueger "talking" and then walking away from each other. There is no evidence as to the content of the yelling and screaming that had occurred, other than mother saying to leave and to get away from her. There is no evidence how long the verbal altercation lasted. As for it getting "physical," the only evidence on that point was testimony by one of the 9-1-1 callers that she saw the man "reach

---

[3] DHS alleged in the petition that mother exposed Z to "domestic violence," but the juvenile court correctly concluded that DHS had not proved any romantic relationship between mother and Krueger. The court found not credible mother's testimony that Krueger was a total stranger to her, and that finding is well supported, but there is no evidence of a romantic relationship.

for" the woman's arm and the woman "pull away," which she described as "the only physical I saw between the two." The other 9-1-1 caller did not testify, and the deputy did not see anything. As for Z, no one testified to her demeanor except the deputy, who described Z as "fine" and observed that she was appropriately dressed and "seemed happy."

On this record, the evidence was insufficient to establish that mother had exposed Z to "violence" so as to create a current threat of serious loss or injury to Z. It is certainly not ideal parenting to yell and scream at another adult while carrying a one-year-old child, to the point of two people calling 9-1-1. Mother's lying to the court about not knowing Krueger also does not reflect well on her. The fact remains that the evidence was insufficient to prove exposure to "violence" as a jurisdictional basis.

ALLEGATION C

The juvenile court found as another basis for dependency jurisdiction that mother has another child, C, for whom she is not a parental resource and the conditions and circumstances that were the basis for the mother not having custody of C, which include domestic violence and substance abuse, have not changed or been ameliorated and interfere with her ability to safely parent Z.

Regarding failure to ameliorate the circumstance that mother's substance abuse interfered with her ability to safely parent C, we understand the court to have made that finding based on mother's failure to engage in services for substance abuse and its view that mother had "engaged in behaviors that clearly look like substance abuse."

Mother was nearly 26 years old in October 2022 when the jurisdictional trial regarding Z was held. There is evidence that mother started using methamphetamine when she was 20 or 21 years old. In October 2020, mother stipulated that substance abuse interfered with her ability to safely parent C. Mother admitted at Z's jurisdictional trial that she continued to use methamphetamine "on occasion" until mid-2021.[4] In March, May, and June 2021, while

_____

[4] Mother also admitted to past heavy marijuana use. Mother was not asked about more recent marijuana use, except one question to clarify that her asserted

mother was pregnant with Z, mother had three urinalyses (UAs) come back positive for amphetamines.

At trial, mother testified that she has been clean of methamphetamine since August 3, 2021. There is evidence in an admitted exhibit that mother had a clean UA on August 11, 2021, although it was not discussed at trial. The record is vague as to other UA requests since Z's birth, except for an instance on July 15, 2022, when DHS requested a UA, mother agreed to it and went to DHS's office, but mother ultimately did not do the UA after a specific issue arose regarding DHS protocols. Mother has offered to do a hair follicle test, but DHS did not follow up on that offer.

DHS did at least two assessments after Z was born and found no basis to remove her. Multiple witnesses who have observed mother parenting Z (specifically, two DHS witnesses and mother's three witnesses) testified to being familiar with signs that someone is under the influence of a controlled substance and to never seeing anything that caused them to believe that mother was under the influence.

The only witness who testified to possible evidence of more recent methamphetamine use by mother was a DHS employee who had monitored mother's visits with C on and off for two and one-half years, including after Z was born (after which mother always brought Z to the visits).[5] The witness testified that there had been a "couple" visits where mother had acted differently than usual, specifically "looking like less engaged with the children and more so kind of lethargic and not as active," which are behaviors that the witness associates with being under the influence of a controlled substance. The witness was not asked and did not say when those occasions took place, although it is reasonable to infer that they were after July 4, 2021, given her

---

"clean" date of August 3, 2021, did not "include" marijuana. Given the absence of any arguments about marijuana use at trial and on appeal, and the juvenile court's silence regarding mother's marijuana use, we do not understand the court to have considered marijuana use as relevant to dependency jurisdiction of Z.

  [5] It is unclear whether some of the visits monitored by the witness occurred after Z's removal (that is, in the three months before trial), such that mother would have been visiting both C and Z. In any event, Z was present at all visits after her birth.

reference to "the children." It is unknown whether they were after August 3, 2021.

Mother has not meaningfully engaged in substance abuse services, despite repeated referrals by DHS.

On this record, we conclude that the juvenile court erred in finding that mother had failed to ameliorate the circumstance that her substance abuse interfered with her ability to safely parent C, so as to create a current threat of serious loss or injury to Z. It is certainly true that mother has almost entirely failed to engage in services for substance abuse. The court was understandably concerned, given that reality, that mother might not actually be clean. But there is only a wisp of evidence of even the possibility of mother using methamphetamine in the 14 months before trial, and there is no evidence of use of a nature or degree that would create a current threat of serious loss or injury to Z. *See Dept. of Human Services v. J. J. B.*, 291 Or App 226, 236, 418 P3d 56 (2018) (discussing cases in which we have recognized that a parent's substance abuse alone does not give rise to dependency jurisdiction and that DHS must prove that a parent uses substances "in a way that puts the child at risk of serious harm" (internal quotation marks omitted)); *see also State v. Reed*, 339 Or 239, 245, 118 P3d 791 (2005) (disbelieving a witness's testimony "does not add anything affirmative to the state's evidence").

As for domestic violence, the juvenile court also found that mother had failed to ameliorate the circumstance that she exposed C to domestic violence, so as to create a current threat of serious injury or loss to Z. That finding appears to have been based entirely on mother's failure to engage in services for domestic violence victims.

The record shows that mother has had three adult romantic relationships in which she was assaulted by her partner. The first was before she had children. The second was C's father, and, in October 2020, mother admitted to exposing C to domestic violence, which is one basis for dependency jurisdiction of C. The third was Singleton. There is no evidence of domestic violence during that relationship, which ended around May 2021, but in August

2021, Singleton assaulted mother in a parking lot, mother obtained a restraining order, and Singleton is currently in prison.

Despite repeated referrals by DHS, mother has not meaningfully engaged in domestic violence services. At the same time, there is no evidence that Z faces a current threat of serious loss or injury from mother's past as a victim of domestic violence. For example, there is no evidence that mother has contact with any of her past partners, is currently in a violent romantic relationship, or has exposed Z to domestic violence.

Ultimately, as to both substance abuse and domestic violence, as much as one might wish that mother would engage in the services offered to her—both for her own benefit and for the benefit of C and Z—this record simply does not support jurisdiction of Z based on mother's failure to ameliorate the circumstances that brought C into care.

## ALLEGATION D

The juvenile court found as another basis for jurisdiction that, "[d]espite having participated in services designed to improve [her] parenting skills, [mother] is unable to demonstrate that she can safely parent the child." The parties agree that, as tried and decided, allegation D is effectively duplicative of the other allegations and need not be separately addressed. We agree and, for the same reasons already discussed, conclude that allegation D was not proved as a basis for dependency jurisdiction.

## CONCLUSION

In sum, the juvenile court erred in asserting dependency jurisdiction over Z on the three bases that it did, considered individually and together. Although we share the juvenile court's concerns regarding mother's failure to engage in services, this evidentiary record was insufficient to establish a current threat of serious loss or injury to Z from mother's conduct. On this record, we reverse the jurisdictional judgment as to Z.

Reversed.