168                 February 22, 2024                 No. 131

*This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).*

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of A. J. O.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

C. O.
and Y. E.,
*Appellants.*

Washington County Circuit Court
22JU04737;
A182040 (Control)

In the Matter of O. O.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

C. O.
and Y. E.,
*Appellants.*

Washington County Circuit Court
22JU04738;
A182041

Thomas A. Goldman, Judge.

Submitted January 30, 2024.

Kristen G. Williams filed the brief for appellant C. O.

Shannon Storey, Chief Defender, Juvenile Appellate Section, and Holly Telerant, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant Y. E.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Emily N. Snook, Assistant Attorney General, filed the brief for respondent.

Before Lagesen, Chief Judge, Hellman, Judge, and DeVore, Senior Judge.

HELLMAN, J.

Affirmed.

**HELLMAN, J.**

In this consolidated appeal, father and mother challenge two judgments that asserted additional bases of jurisdiction over their children, O and A. Parents each assert two assignments of error and argue that the evidence was insufficient to prove that any mental health problems interfere with their ability to safely parent the children. For the following reasons, we affirm.

In the first jurisdictional trial, the juvenile court asserted jurisdiction over the children on the following bases: that parents do not understand the children's basic needs and lack the necessary skills to safely parent; that A needed medical care that parents failed to provide; and that father's anger and impulse control problems interfere with his ability to safely parent. We affirmed. *Dept. of Human Services v. C. O.*, 330 Or App 528, ___ P3d ___ (2024) (non-precedential memorandum opinion).

After the state filed amended petitions alleging additional bases for jurisdiction, the juvenile court held a second trial and took jurisdiction over the children based on its determination that father's and mother's mental health problems interfere with their ability to safely parent the children. Although the court acknowledged that father had testified that he had been diagnosed with autism, ADHD, and tics, the court did not base its determination solely on those diagnoses. Rather, the court emphasized father's unpredictable conduct during visits with the children and found that "mother's responses to reality, as she perceived it, [and] mother's inability to recall and relate things that actually happened in front of her, bring great concern." This appeal followed.

"[W]e view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the juvenile court's ruling and then assess whether the record was legally sufficient to permit the outcome that was reached." *Dept. of Human Services v. S. R. C.*, 263 Or App 506, 508, 328 P3d 814, *rev den*, 356 Or 397 (2014).

Under ORS 419B.100(1)(c), a juvenile court may assert dependency jurisdiction over a child when the child's "condition or circumstances are such as to endanger the

welfare of the [child] or of others." The state must "demonstrate a nexus between the allegedly risk-causing conduct and the harm to the child." *Dept. of Human Services v. C. J. T.*, 258 Or App 57, 62, 308 P3d 307 (2013).

"[W]hen, as here, a juvenile court already has taken jurisdiction over a child on one basis and a new or amended petition alleges additional bases for dependency jurisdiction," the "focus on [the] threat of harm to the child remains[.]" *Dept. of Human Services v. S. A. B. O.*, 291 Or App 88, 99, 417 P3d 555 (2018). Accordingly,

> "we examine whether sufficient evidence exists, from which a reasonable factfinder could conclude by a preponderance of the evidence, either that a current risk of harm to [the child] exists from the additional allegation standing alone, or that the additional allegation contributes to or enhances the risk associated with the already established bases of jurisdiction."

*S. R. C.*, 263 Or App at 511 (internal quotation marks omitted).

Here, the juvenile court found a nexus between parents' mental health problems and the children's safety and stated that "there needs to be a different level of investigation and understanding into how [parents] best function and how you both best learn, so that these kids can be safely returned to your care." When viewing the record in the light most favorable to the juvenile court's ruling, we conclude that the evidence is legally sufficient to support the court's determination. *See id.*

The record demonstrates that father's mental health problems affect his understanding of safe and appropriate conduct and interfere with his ability to safely parent the young children. For example, when O was two years old and learning to dress herself, she pulled up her shirt and showed father her stomach. Father grew angry, repeatedly threw an empty bottle against the wall, and cursed at mother when she told him to lower his voice. On another occasion, father told a visit coordinator to turn off a children's movie soundtrack because it was "inappropriate." But during a subsequent visit with A, father played music that contained obscene lyrics, pulled his shirt up around his

neck, and paced around the room shouting made-up lyrics about someone having depraved thoughts about children.

Father's conduct also prevents O from receiving services with parents and prevents parents from learning about her needs. A social services specialist testified that after DHS included parents in O's speech and occupational therapy, father accused a therapist of hitting O and became so aggressive that the session was terminated. As a consequence, O could not receive those services during visits with parents.

The evidence is also legally sufficient to establish the allegation that mother's mental health problems interfere with her ability to safely parent. Here, the juvenile court found that mother failed to "actively protect[]," "remove," or "comfort" the children during father's "explosions" and that she could not recount events that she had just experienced. The record supports those findings. Mother testified that father had always behaved appropriately during the visits and the court heard testimony that mother did not intervene when father conducted himself inappropriately. Mother also testified that father's conduct at the previous trial—when he interrupted the proceedings and prevented mother from testifying before being handcuffed and removed—was typical and appropriate. Moreover, a caseworker testified that soon after a medical provider urged parents to take A to the hospital in an ambulance, mother told the caseworker that the medical provider had said that A was fine.

Because the evidence in the record is sufficient to establish that father's and mother's mental health problems pose a current threat of harm to the children or contribute to and enhance the risk to the children associated with the established bases, the juvenile court did not err.

Affirmed.