736 March 18, 2026 No. 196

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of S. H. G.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

L. R. R.,
*Appellant.*

Lane County Circuit Court
25JU01170; A188201

Valeri L. Love, Judge.

Argued and submitted January 22, 2026.

Sean Connor, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Shannon Storey, Chief Defender, Juvenile Appellate Section, Oregon Public Defense Commission.

Julia A. Taylor, Assistant Attorney General, argued the cause for respondent. Also on the brief were Dan Rayfield, Attorney General, and Benjamin Gutman, Deputy Attorney General.

Before Tookey, Presiding Judge, Egan, Judge, and Jacquot, Judge.

TOOKEY, P. J.

Reversed and remanded for entry of judgment omitting mother's failure to meet the child's educational needs from jurisdictional basis 4D; otherwise affirmed.

**TOOKEY, P. J.**

Mother appeals from the judgment in which the juvenile court took jurisdiction over mother's 11-year-old child, S. In four assignments of error, mother challenges each of the bases on which the court asserted dependency jurisdiction as well as its overall ruling to assert dependency jurisdiction. We reverse and remand for entry of a judgment omitting mother's failure to meet the child's educational needs from jurisdictional basis 4D, and otherwise affirm.

Mother does not request *de novo* review and, given that this is not an exceptional case, we do not exercise our discretion to engage in such review. ORS 19.415(3)(b); ORAP 5.40(8)(c). We view the evidence "as supplemented and supported by permissible derivative inferences, in the light most favorable to the juvenile court's disposition" and "assess whether the evidence was sufficient to permit the challenged determination." *Dept. of Human Services v. D. L.*, 308 Or App 295, 297, 479 P3d 1092 (2020), *rev den*, 367 Or 668 (2021) (internal quotation marks and citation omitted). We are bound by the juvenile court's express and implied findings of fact and credibility determinations if they are supported by any evidence in the record. *Dept. of Human Services v. T. N. M.*, 315 Or App 160, 162, 501 P3d 76 (2021); *Dept. of Human Services v. A. J. G.*, 304 Or App 221, 228 n 4, 465 P3d 293, *rev den*, 366 Or 826 (2020).

Under ORS 419B.100(1)(c), the juvenile court has "exclusive original jurisdiction" over a child whose "condition or circumstances are such as to endanger the welfare of the child." *Dept. of Human Services v. A. F.*, 243 Or App 379, 385, 259 P3d 957 (2011) (internal quotation marks omitted). To establish a jurisdictional basis, the Oregon Department of Human Services (ODHS) must prove by a preponderance of evidence that a child's welfare is endangered because, under the "totality of the circumstances," there is a current threat of serious loss or injury to the child that is reasonably likely to be realized. *Dept. of Human Services v. K. C. F.*, 282 Or App 12, 19, 383 P3d 931 (2016). ODHS has the burden of demonstrating a connection between the parent's conduct and the threatened harm to the child. *Dept. of Human*

*Services v. L. E. F.*, 307 Or App 254, 258, 476 P3d 119 (2020), *rev den*, 367 Or 559 (2021).

In this case, there was evidence that mother was absent from the home for extended periods of time. The juvenile court asserted jurisdiction over S because (1) "mother has been physically absent from the home and not regularly reachable, leaving the child without an adult in the home, which has resulted in physical and/or emotional neglect to the child, which presents a threat of harm" (jurisdictional basis 4C) (2) "mother fails to meet the child's basic, emotional, and/or educational needs, which presents a threat of harm" (jurisdictional basis 4D), and (3) "mother lacks the parenting skills, knowledge, motivation and/or judgment necessary to safely parent" (jurisdictional basis 4F).

We begin by addressing the court's assertion of jurisdiction based on "mother['s] fail[ure] to meet the child's basic, emotional, and/or educational needs, which presents a threat of harm." The juvenile court found that S could have been doing "much better *** in school if there was improved attendance," and that "[t]here are negative impacts of [S] not having his needs met, not getting enough sleep, not being nurtured by a parent, and *** there can be the negative effect on [S's] ability to take in information in his brain development." The record supports a factual finding that S regularly missed school and that he was at one point unenrolled from the roster of his elementary school. Those circumstances are not ideal for any child. However, the evidence presented at the hearing demonstrated that S consistently passed all his classes and that his school promoted him to the next grade at the end of each term. ODHS presented no evidence of any likely future risk to S's education that would rise to the level of authorizing juvenile court intervention into the family. *See Dept. of Human Services v. S. D. I.*, 259 Or App 116, 121, 312 P3d 608 (2013) ("a court cannot take jurisdiction over a child based solely on a risk of some harm; the type, degree, and duration of the harm must be such that exposure to a reasonable likelihood of that harm justifies juvenile court jurisdiction" (emphasis omitted)); *Dept. of Human Services v. C. J. T.*, 258 Or App 57, 62, 308 P3d 307 (2013) (ODHS must present evidence demonstrating a

"nexus between the allegedly risk-causing conduct and the harm to the child").

Because ODHS did not establish a nexus between mother's failure to ensure that S attended school and a non-speculative and current risk of harm to S, we conclude that the juvenile court erred in asserting jurisdiction based on its determination that mother's failure to provide for S's educational needs presented a threat of harm to the welfare of S.

The remaining jurisdictional bases are interwoven and linked one with the other, and so we address mother's combined arguments. When the record is viewed in the light most favorable to the juvenile court's disposition, we conclude that the totality of the circumstances permitted the juvenile court to determine that mother's physical absence from the home, unavailability to S, inability to meet S's basic and emotional needs, and mother's lack of parenting skills, knowledge, motivation, and judgment presented a current, nonspeculative threat of harm to S's safety. The juvenile court found that mother "was not [residing] at the home[]" with S and determined that S was at risk of harm as a result of being left without an adult caregiver for extended periods of time. The juvenile court further found:

> "This child was a mess when the school went to go see him at home. This is a child who has had to microwave food without a parent present, rely on a 15 year old without a parent present, sometimes go to the mini-mart, showing up at school disheveled and in the same pajamas, doing laundry when there was soap in the home, and for emergencies supposed to call Mom and sometimes she picked up and sometimes she didn't. That places a small child in a house without an adult and without provisions made for any needs or emergencies. She did not parent, and that is a huge concern to the court."

Regarding S's need for counseling, the juvenile court found that "it is imperative that [mother] is the one, as the parent, taking the lead on making sure [S] has appropriate services," but that, while "the school went above and beyond to try to make sure there was a connection for [S] to get his needs met," "the court's impression of [m]other's

testimony was to blame this on other people" and "that she ultimately admitted she didn't fill the paperwork out."

The juvenile court's factual findings were supported by evidence in the record. A school counselor at S's school testified that she had met with S several times, that she unsuccessfully attempted to call mother "at least five times" without receiving a return phone call, and that she visited the house where S was staying on three separate occasions. The counselor testified that S told her that mother was not "helping [S] get to bed or making sure [S was] going to bed" because mother was "at her boyfriend's house" and had not lived in the house with S "for about a year." According to testimony from the head secretary at S's school, the school would attempt to call mother any time S was absent, but there were "quite a few" occurrences where mother's voice-mail was full. The school counselor testified that S told her that mother would drop off groceries "sometimes once a week, sometimes once a month, or that she would send money in cash app [to S's 15-year-old brother]," and that S would "cook things in the microwave or [eat] ready-to-eat things or they would buy stuff at the *** little mart." The counselor also testified that S told her that, in case of an emergency, S "would call his mom and that sometimes she would answer or that she would get back to him."

We agree with ODHS that the juvenile court did not err when it determined that under the totality of the circumstances at the time of trial, there was a current, non-speculative threat of harm to S's safety when mother left S home for six months to a year without an adult present, was not regularly reachable by S, and failed to meet S's basic and emotional needs. The juvenile court articulated its reasoning for establishing jurisdiction, and its determinations were supported by the evidentiary record and establish a current threat of serious loss or injury to S.

Reversed and remanded for entry of judgment omitting mother's failure to meet the child's educational needs from jurisdictional basis 4D; otherwise affirmed.